1  Phillip J. Eskenazi (SBN 158976)
   peskenazi@hunton.com
2  **HUNTON & WILLIAMS LLP**
   550 South Hope Street, Suite 2000
3  Los Angeles, California 90071-2627
   Telephone:   (213) 532-2000
4  Facsimile:   (213) 532-2020

5  Charles A. Gall (*Pro Hac Vice Application Pending*)
   cgall@hunton.com
6  James W. Bowen (*Pro Hac Vice Application Pending*)
   jbowen@hunton.com
7  **HUNTON & WILLIAMS LLP**
   1445 Ross Avenue, Suite 3700
8  Dallas, Texas 75202
   Telephone:   (214) 979-3000
9  Facsimile:   (214) 880-0011

10 Attorneys for Defendant
   JPMORGAN CHASE BANK, N.A.

11

12            **UNITED STATES DISTRICT COURT**

13          **NORTHERN DISTRICT OF CALIFORNIA**

14              **SAN FRANCISCO DIVISION**

15 | KIMBERLY BENSON, KARIMDAD | CASE NO.: CV 09-5272 (EMC) |
BALOCH and NEERJA JAIN
16 GURSAHANEY, individually and on | **DEFENDANT JPMORGAN CHASE**
behalf of all others similarly situated, | **BANK, N.A.'S:**
17

18                 Plaintiffs,        | **(1)   NOTICE OF MOTION AND**
                                      |        **MOTION TO DISMISS**
19        v.                          |        **PURSUANT TO FED. R. CIV. P.**
                                      |        **12(b)(6); AND**
20

21 JPMORGAN CHASE BANK, N.A.,         | **(2)   MEMORANDUM OF POINTS**
   individually and as successor in interest |   **AND AUTHORITIES IN**
22 of WASHINGTON MUTUAL, INC.,        |        **SUPPORT THEREOF**

23                 Defendant.         | DATE:       February 3, 2010
                                      | TIME:       10:30 a.m.
24                                    | PLACE:      Courtroom C

25                                    | *[Declaration of Phillip J. Eskenazi, Request*
                                      | *for Judicial Notice and [Proposed] Order*
26                                    | *Filed Concurrently Herewith]*

27                                    | Complaint Filed:   November 5, 2009

28

*Hunton & Williams LLP*
*550 South Hope Street, Suite 2000*
*Los Angeles, California 90071-2627*

---

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 10:30 a.m. on February 3, 2010 or as soon thereafter as the matter may be heard in Courtroom C of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant JPMORGAN CHASE BANK, N.A. ("Chase") will, and hereby does, move the Court for an order dismissing the complaint of Plaintiffs Kimberly Benson, Karimdad Baloch and Neerja Jain Gursahaney (collectively, "Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

This Motion is based upon the grounds that Plaintiffs have failed to state a claim upon which relief may be granted as to all of the causes of action they assert: (1) aiding and abetting fraud; (2) aiding and abetting conversion; (3) aiding and abetting a breach of fiduciary duty; (4) conspiracy to commit fraud and conversion; and (5) violation of BUS. & PROF. CODE § 17200 *et seq*. ("UCL"). Plaintiffs' aider and abettor claims fail because Plaintiffs fail to allege with particularity that Washington Mutual Bank ("WaMu"), Chase's alleged predecessor in interest, had actual knowledge of the alleged specific, primary wrong or that WaMu substantially assisted in the perpetration of the underlying Ponzi scheme at issue. Plaintiffs' conspiracy claim fails because Plaintiffs fail to plead knowledge and intent or an agreement with particularity. Plaintiffs' UCL claim fails because it is predicated upon the alleged purchase of "securities" and further, Plaintiffs fail to plead the requisite causal connection between WaMu's alleged misconduct and their injuries. Finally, all of Plaintiffs' claims fail because none is plausible under *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice and

---

[1] Chase brings this Motion in the event that the Court does not grant its concurrently filed Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) and the doctrine of judicial comity.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  Declaration of Phillip J. Eskenazi filed concurrently herewith, all pleadings and papers

2  on file, and upon such oral argument as may be made at the hearing on this Motion.

3

4  Dated:  December 23, 2009          By: /s/     Phillip J. Eskenazi

5                                     Phillip J. Eskenazi (SBN 158976)
                                       peskenazi@hunton.com
6                                      **HUNTON & WILLIAMS LLP**
                                       550 South Hope Street, Suite 2000
7                                      Los Angeles, California 90071-2627
                                       Telephone:   (213) 532-2000
8                                      Facsimile:   (213) 532-2020

9                                      and

10

11                                     Charles A. Gall *(Pro Hac Vice Application Pending)*
                                       cgall@hunton.com
12                                     James W. Bowen *(Pro Hac Vice Application Pending)*
                                       jbowen@hunton.com
13                                     **HUNTON & WILLIAMS LLP**
                                       1445 Ross Avenue, Suite 3700
14                                     Dallas, Texas 75202
                                       Telephone:   (214) 979-3000
15                                     Facsimile:   (214) 880-0011

16                                     Attorneys for Defendant
                                       JPMORGAN CHASE BANK, N.A.

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     ARGUMENT...........................................................................................................2

    A.  Plaintiffs must plead particularized facts, not conclusions, to state a claim that is plausible.................................................................................2

    B.  The Complaint fails to state aider and abettor claims..............................4

        1.  Plaintiffs fail to allege with particularity that WaMu had actual knowledge of the specific, primary wrong and made a conscious decision to participate. ....................................................4

        2.  Plaintiffs have failed to plead with particularity that WaMu provided substantial assistance. ..............................................8

    C.  Plaintiffs' conspiracy claim fails to state a claim upon which relief can be granted. ...............................................................................9

        1.  Plaintiffs fail to plead adequately that an agreement existed. .........9

        2.  Plaintiffs fail to allege the requisite knowledge and intent. ..........10

    D.  Plaintiffs' allegations fail to state a claim under the UCL......................11

        1.  Because the certificates of deposit allegedly purchased by Plaintiffs are securities, Plaintiffs fail to plead a UCL claim upon which relief can be granted..................................................11

        2.  Plaintiffs fail to plead the requisite causal connection between WaMu's alleged conduct and their injuries. ...................12

    E.  Plaintiffs' allegations are not plausible...................................................13

III.    CONCLUSION ...................................................................................................14

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

# <u>TABLE OF AUTHORITIES</u>

**PAGE NOS.**

## FEDERAL CASES

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ............................................................... 2-3, 13-14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................. 2-3, 13

*Chance World Trading E.C. v. Heritage Bank of Commerce*,
  438 F. Supp. 2d 1081 (N.D. Cal. 2005) .................................... 4, 6

*Cromer Finance Ltd. v. Berger*,
  137 F. Supp. 2d 452 (S.D.N.Y. 2001) ....................................... 8

*Dietrich v. Bauer*,
  76 F. Supp. 2d 312 (S.D.N.Y. 1999) ......................................... 11

*Grees v. PNC Bank, N.A.*,
  100 F. Supp. 2d 289 (E.D. Penn. 2000) ..................................... 6

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................... 3

*Martinez Colon v. Santander National Bank*,
  4 F. Supp. 2d 53 (D. Puerto Rico 1998) .................................... 6

*Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) .......................................... 14

*Neilson v. Union Bank of Cal.*,
  *N.A.*, 290 F. Supp. 2d 1101 .................................................... 8-9

*In re Philip Serv. Corp. Sec. Lit.*,
  383 F. Supp. 2d 463 (S.D.N.Y. 2004) ....................................... 14

*In re Sharp Intern. Corp.*,
  281 B.R. 506 (Bankr. E.D.N.Y. 2002) ....................................... 6

*Shearson Lehman Brothers v. Greenberg*,
  60 F.3d 834 (9th Cir. 1995) ........................................................ 11

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................... 10

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

## STATE CASES

2

3

*Aiken v. Interglobal Mergers & Acquisitions*,
2006 WL 1878323 (S.D.N.Y. July 5, 2006) ................................................6

4

*Bowen v. Ziasun Technologies, Inc.*,
116 Cal. App. 4th 777 (2004).............................................................................11

5

*Brant v. Kipp*,
2009 WL 1444691 (C.D. Cal. May 21, 2009) ........................................9

6

7

*Burns v. Neiman Marcus Group, Inc.*,
173 Cal. App. 4th 474 (1999)............................................................................5

8

*Casey v. U.S. Bank Nat. Association*,
127 Cal. App. 4th 1138 (2005)........................................................................ 4-7

9

10

*Emery v. VISA Internat. Service Association*,
95 Cal. App. 4th 952 (2002) ......................................................................... 12-13

11

*In re Firearm Cases*,
126 Cal. App. 4th 959 (2005).......................................................................... 12-13

12

13

*Howard v. Superior Court*,
2 Cal. App. 4th 745 (1992)................................................................................4

14

*Kidron v. Movie Acquisition Corp.*,
40 Cal. App. 4th 1571 (1995)....................................................................... 10-11

15

16

*Lomita Land Water Co. v. Robinson*,
154 Cal. 36 (1908)...............................................................................................4

17

*Marcelos v. Dominquez*,
2008 WL 2788173 (N.D. Cal. July 18, 2008)........................................9

18

19

*Marlin v. Moody National Bank*,
2006 WL 2382325 (S.D. Tex. Aug. 16, 2006).........................................6

20

*Medical Supply Chain, Inc. v. U.S. Bancorp*, 2003 WL 21479192 (D.
Kan. June 16, 2003)..............................................................................................6

21

*Perera v. Chiron Corp.*,
1996 WL 251936 (N.D. Cal. May 8, 1996) ............................................11

22

23

*Quinn v. United States*,
2003 WL 22133715 (W.D. Okla. July 10, 2003)..................................... 6-7

24

*Scognamillo v. Credit Suisse First Boston LLC*,
2005 WL 2045807 (N.D. Cal. Aug. 25, 2005)...........................................11

25

26

*Wuliger v. Liberty Bank, N.A.*,
2004 WL 3377416 (N.D. Ohio Mar. 4, 2004) ..........................................6

27

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

**DOCKETED CASES**

*Litson-Gruenberg v. JPMorgan Chase & Co.*,
   No. 7:09-CV-00056 (N.D. Tex. Dec. 16, 2009) ......................................2

*Securities and Exchange Commission v. Millennium Bank, et al.*,
   Case No. 7:09-CV-00050-0...........................................................1

**FEDERAL STATUTES**

15 U.S.C. § 77b(1).........................................................................11

28 U.S.C. § 1404(a) .......................................................................1

**STATE STATUTES**

Cal. Corp. Code § 25019 ...............................................................11

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

1

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## MEMORANDUM OF POINTS AND AUTHORITIES

In the event the Court does not grant its concurrently filed Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) and the doctrine of judicial comity, Chase hereby moves to dismiss the Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.  INTRODUCTION

This case arises out of the alleged "Ponzi" scheme that is the subject of *Securities and Exchange Commission v. Millennium Bank, et al.,* Case No. 7:09-CV-00050-0, pending in the United States District Court, Northern District of Texas. According to Plaintiffs, UT of S, LLC and related entities and individuals (collectively, "UTS") fraudulently induced Plaintiffs and others to invest in bogus certificates of deposit issued by Millennium Bank.

With respect to Chase, Plaintiffs effectively allege that Washington Mutual Bank ("WaMu") is liable for losses they incurred in the Ponzi scheme because WaMu allowed UTS to maintain account(s) from which UTS conducted its business.  For that reason, Plaintiffs allege that WaMu is liable for Plaintiffs' losses under claims for:  (a) aiding and abetting fraud and fraudulent concealment; (b) aiding and abetting conversion; (c) aiding and abetting breach of fiduciary duty; (d) conspiracy; and (e) violation of Bus. & Prof. Code §17200, *et seq.*  Finally, Plaintiffs allege that Chase is the successor to WaMu, and it therefore is responsible for WaMu's alleged wrongdoing.[2]

Although each claim fails for all of the reasons set forth below, they share a common problem -- the inability of Plaintiffs to allege that WaMu had actual knowledge of the wrongdoing and agreed to participate.  This same defect recently resulted in the dismissal of a virtually identical claim by Judge O'Connor in the

---

[2] Under the terms of a September 25, 2008 agreement between Chase and FDIC as receiver for WaMu, Chase acquired certain assets of WaMu.  Chase, however, is *not* the successor of WaMu.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Northern District of Texas.[3]  More specifically, Plaintiffs' Class Action Complaint

("Comp.") fails to state a claim upon which relief can be granted for several reasons:

*first*, Plaintiffs' aider and abettor claims fail because:

    (a)    Plaintiffs fail to allege with particularity that WaMu had actual knowledge of the alleged specific, primary wrong -- that Plaintiffs fraudulently had been induced to invest in a Ponzi scheme operated by UTS; and

    (b)    Plaintiffs fail to allege with particularity that WaMu substantially assisted UTS with its Ponzi scheme;

*second*, Plaintiffs' conspiracy claim fails because:

    (a)    Plaintiffs fail to plead knowledge and intent with particularity; and

    (b)    Plaintiffs fail to plead an agreement with particularity;

*third*, Plaintiffs' UCL claim fails because:

    (a)    the certificates of deposit allegedly purchased by Plaintiffs are securities, and the UCL therefore is inapplicable; and

    (b)    Plaintiffs fail to plead WaMu's knowledge of and participation in the statutory violation; and

*fourth*, all of Plaintiffs' claims fail because none is plausible.

For those reasons, Chase respectfully requests that the Court dismiss the

Complaint.

## II.    ARGUMENT

### A.    Plaintiffs must plead particularized facts, not conclusions, to state a claim that is plausible.

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544 (2007), the Supreme Court clarified the pleading standard under Rule 8

of the Federal Rules of Civil Procedure.  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is

---

[3] In *Litson-Gruenberg v. JPMorgan Chase & Co.*, No. 7:09-CV-00056 (N.D. Tex. Dec. 16, 2009), the court dismissed the same aider and abettor claims against Chase arising out of the Millennium Bank Ponzi scheme.  A copy of the Amended Complaint and Memorandum Opinion and Order in *Litson-Gruenberg* are attached as Exhibits "9" and "10" to Chase's Request for Judicial Notice, filed concurrently herewith.

plausible." *Twombly*, 550 U.S. at 570; *Ashcroft*, 129 S.Ct. at 1949. A court is to disregard all factual and legal conclusions. *Id.* Instead, the court is to determine whether the well-pleaded facts permit the court, drawing on its judicial experience and common sense, to infer more than a mere possibility of misconduct. *Ashcroft*, 129 S.Ct. at 1950; *Twombly*, 550 U.S. at 555.

In *Ashcroft*, the plaintiff, a post-September 11 detainee, alleged that Attorney General Ashcroft and FBI Director Mueller "knew of, condoned, and willfully and maliciously agreed . . . to subject the plaintiff to harsh confinement conditions because of his race, religion, and/or national origin." *Ashcroft*, 129 S.Ct. at 1951. The Court acknowledged that, if that allegation were accepted as true, the plaintiff would have stated a viable claim. *Id.* But, the Court held that the complaint failed to state a claim because the actual knowledge allegation "amount[ed] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Id.*

The Court also concluded that the claims alleged by the plaintiff were not plausible. More specifically, the Court held that plaintiff's allegations showed only that Ashcroft and Mueller *conceivably* had actual knowledge of plaintiff's treatment. *Id.* Having failed to allege specific facts that "nudg[ed] his claim across the line from conceivable to plausible," the Court concluded that the plaintiff's allegations failed. *Id.* at 1952.

In the present case, Plaintiffs must allege *more* than that required of the *Ashcroft* plaintiff. All of Plaintiffs' claims sound in fraud. Accordingly, Plaintiffs' claims are governed by Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (all claims "grounded in fraud" or "sound[ing] in fraud" are governed by Rule 9(b)). Rule 9(b) requires Plaintiffs to plead, with particularity, the who, what, when, where, and how of the alleged fraud and aiding and abetting. *Id.* at 1124. Thus, Plaintiffs "must set forth *more* than the neutral facts necessary to identify the transaction." *Id.* (emphasis in original).

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

3

1

**B.    The Complaint fails to state aider and abettor claims.**

2     Under California law, liability may be imposed for aiding and abetting an

3  intentional tort if the person:  (a) knows the other person's conduct constitutes a

4  breach of duty; and (b) gives substantial assistance or encouragement to the primary

5  wrongdoer.  *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144 (2005);

6  *Litson-Gruenberg*, slip op. at 3 (*citing Chance World Trading E.C. v. Heritage Bank

7  of Commerce*, 438 F. Supp. 2d 1081, 1084 (N.D. Cal. 2005)).  Plaintiffs fail to plead

8  either element in compliance with Rule 9(b) or Rule 8.

9         **1.    Plaintiffs fail to allege with particularity that WaMu had
            actual knowledge of the specific, primary wrong and made a
10           conscious decision to participate.**

11     California law requires a showing that the defendant had actual knowledge of

12  the *specific, primary wrong*, *Casey*, 127 Cal. App. 4th at 1144 (*citing Lomita Land

13  Water Co. v. Robinson*, 154 Cal. 36, 47 (1908)), and a showing that WaMu made a

14  conscious decision to participate in UTS' Ponzi scheme.  *Howard v. Superior Court*, 2

15  Cal. App. 4th 745, 748-49 (1992) ("Aiding and abetting focuses on whether a

16  defendant knowingly gave 'substantial assistance' to someone who performed

17  wrongful conduct . . . [which] necessarily requires a defendant to reach a conscious

18  decision to participate in tortious activity for the purpose of assisting another in

19  performing a wrongful act."); *see also Litson-Gruenberg,* slip op. at 4 ("The words

20  aid and abet  . . . may fairly be construed to imply an intentional participation with

21  knowledge of the object to be obtained.") (*quoting Casey*).

22     Suspicion or knowledge of general wrongdoing or "skullduggery" is not

23  enough.  *Casey*, 127 Cal. App. 4th at 1144; *Litson-Gruenberg*, slip op. at 4 (*citing

24  Chance World*, 438 F. Supp. 2d at 1084-85).  Likewise, a plaintiff "cannot rely on

25  inferences drawn from the sloppy work by [the bank] . . . ."  *Chance World*, 438 F.

26  Supp. 2d at 1085-86.  Indeed, in the context of banking activity, requiring more than

27  suspicion and sloppy work is particularly appropriate because banks have no duty to

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

4

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

non-customers to investigate or report suspicious activities. *Burns v. Neiman Marcus Group, Inc.*, 173 Cal. App. 4th 474, 498 (1999).

In *Casey*, the plaintiff brought aider and abettor claims against a number of banks for their alleged participation in a scheme by a company's officers and directors to divert more than $36 million in company funds for their personal benefit. 127 Cal. App. 4th at 1141. Thus, the "specific, primary wrong" was the alleged looting of the company.

In support of his claims, the plaintiff alleged that the banks, among other things: (1) allowed its customers to open accounts with invalid tax identification numbers; (2) allowed its customers to use the accounts to drain funds from the company to accounts of the individual directors, officers, their families, and affiliated companies; (3) allowed large sums of cash, often in excess of $250,000 and aggregating approximately $6 million, to be taken out of the bank in unmarked duffel bags; (4) ignored violations of banking regulations and the bank's own internal policies and procedures; (5) paid obviously forged negotiable instruments; and (6) ignored monetary restrictions printed on the face of checks (*i.e.*, "not to exceed") by paying sums in excess of the limits. *Id.* at 1142. The *Casey* court concluded that those allegations failed to state an aider and abettor claim. *Id.* at 1153.

According to the *Casey* court, although the plaintiff's complaint provided "ample details of the bank's improper conduct in their business dealings with the [account holders], the complaint fail[ed] to establish that the banks had actual knowledge of the primary violation in which they purportedly participated." *Id.* at 1148. It was insufficient for the plaintiff to allege that "the banks knew something fishy was going on . . . " or that the banks, with proper oversight in compliance with banking regulations, should have learned of the fraud. *Id.* at 1149. Instead, to state a claim, the plaintiff was required to allege non-conclusory facts showing that the banks had actual knowledge that the account holders were stealing the company's funds. *Casey*, 127 Cal. 4th at 1149.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

In *Chance World*, another court sitting in this very District followed *Casey* and entered judgment for a bank that had violated its internal policies and allowed its customer to steal the plaintiff's funds without the required signatures to make withdrawals for an account at the bank. 438 F.2d at 1087. Other courts have dismissed aider and abettor claims against banks and other financial institutions for the similar reasons.[4]

At most, Plaintiffs allege nothing more than sloppy banking practices by WaMu that allegedly violated banking regulations requiring the reporting of suspicious activities:

- "[g]iven the *lack of oversight or apparent concern* about Wise's suspicious activities . . . ." (Comp. at 21) (emphasis added);

- "WaMu . . . had *no methodology or policy* in place to prevent or detect money laundering . . . ." (Comp. at 23) (emphasis added);

- "[w]ith respect to the Nevada LLC's, such an audit *would have, at a minimum, investigated* . . . ." (Comp. at 24) (emphasis added); and

- the OTS imposed a Consent Order on WaMu "for *poor, sloppy, inadequate and, in some instances, non-existent* controls relating to compliance with the U.S. anti-money laundering statutes . . ." (Comp. at 21) (emphasis added).

Sloppy banking practices, however, do not equate with actual knowledge of the fraud. *Chance World*, 438 F. Supp. 2d at 1084. Similarly, allegations regarding violations of banking regulations do not constitute an allegation of actual knowledge. *Id.*; *Casey*, 127 Cal. App. 4th at 1151.[5]

---

[4] *Litson-Gruenberg,* slip op. at 5; *In re Sharp Intern. Corp.,* 281 B.R. 506, 515 (Bankr. E.D.N.Y. 2002) (dismissed aider and abettor claims relating to the looting of corporate assets even though the bank allegedly had confirmed its "long held suspicions that the [officers] were engaged in fraudulent conduct on a major scale . . . ," because there was no allegation that the bank actually knew of the specific wrong).

[5] Banking regulations such as the Bank Secrecy Act do not create private rights of action. *Wuliger v. Liberty Bank, N.A.,* 2004 WL 3377416 (N.D. Ohio Mar. 4, 2004); *Martinez Colon v. Santander National Bank,* 4 F. Supp. 2d 53 (D. Puerto Rico 1998); *Grees v. PNC Bank, N.A.,* 100 F. Supp. 2d 289 (E.D. Penn. 2000); *Aiken v. Interglobal Mergers & Acquisitions,* 2006 WL 1878323 (S.D.N.Y. July 5, 2006); *Marlin v. Moody National Bank,* 2006 WL 2382325 (S.D. Tex. Aug. 16, 2006); *Medical Supply Chain, Inc. v. U.S. Bancorp.,* 2003 WL 21479192 (D. Kan. June 16, 2003);

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

1       Moreover, allegations regarding WaMu's lack of oversight or controls are the

2 antithesis of actual knowledge.  That WaMu might have learned of UTS' activities if

3 it properly had overseen the UTS accounts is, at most, a "should have known"

4 allegation.[6]  Whether WaMu should have known of the Ponzi scheme is irrelevant.

5       Plaintiffs further make a number of allegations that WaMu ignored facts that,

6 according to Plaintiffs, might have aroused suspicion.  *See* Comp. at 20 (WaMu

7 "knew that hundreds millions of dollars in investor funds were flowing into the

8 account and then being wired [out] . . . ."); 22 (discussing examples of account

9 activity "that should raise red flags . . . ."); 23 (WaMu knew that UTS was an affiliate

10 of a bank licensed in St. Vincent and the Grenandines which are "on the Financial

11 Action Task Force's list of non-cooperative countries and territories"); 18 (taking

12 receipt of checks "in large bulks physically delivered . . ." to WaMu); and 19

13 (allegations regarding Wise's payments on his credit cards and expenses relating to

14 Wise's personal jet).  But, allegations that WaMu knew "something fishy was going

15 on" do not rise to sufficient allegations of actual knowledge of the primary, underlying

16 wrong.  *Casey*, 127 Cal. App. 4th at 1149; *compare id.* at 1142 (customer carrying

17 large sums of cash out of bank in an unmarked duffel bag, etc., does not allege actual

18 knowledge).  The allegations in this case pale in comparison to the allegations in

19 *Casey*.

20       The *Litson-Gruenberg* court examined and dismissed the same allegations

21 against Chase arising out of the Millennium Bank Ponzi scheme.

---

22

23 and *Quinn v. United States*, 2003 WL 22133715 (W.D. Okla. July 10, 2003).  Stripped to their essence, Plaintiffs' claims are nothing more than attempts to assert civil claims under those regulations.

24

25 [6] Plaintiffs allege that, in connection with the provisioning to UTS of cash management software and remote deposit hardware, WaMu "purportedly" conducted an audit.  Comp. at 23-25.

26 That audit, according to Plaintiffs, would have included an investigation into the nature of UTS' business, its industry, its financial strength, whether UTS was authorized to sell securities, number of employees, and the account activity.  *Id.* at 24-25.  Plaintiffs do not allege that such an audit was

27 conducted.  Plaintiffs also do not allege, nor could they, that such an audit, if it had been conducted, *in fact* revealed that UT of S fraudulently was inducing people to invest in bogus certificates of

28 deposit issued by Millennium Bank.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

7

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

> Indeed, after a thorough review of Plaintiff's asserted facts that she contends establish actual knowledge, the Court fails to identify factual formulations that constitute actual knowledge. Plaintiff fails to allege that Defendant [Chase] knew the Ponzi defendants were making false representations or stealing the investors' money based on the Ponzi defendants' representations. In essence, the allegations are an artful manner of stating that Defendant should have known of the Ponzi defendants' actions. Plaintiff's factual narrative is, at best, merely a story of suspicious activity that Plaintiff contends should have provided Defendant notice of the Ponzi scheme. As such, this is not sufficient to satisfy the requirement of actual knowledge for aider and abettor liability. *Neilson*, 290 F.Supp.2d at 1118-1119.

*Litson-Gruenberg*, slip op. at 5. Plaintiffs' complaint fails for the same deficiency.

### 2. Plaintiffs have failed to plead with particularity that WaMu provided substantial assistance.

With respect to the substantial assistance element, Plaintiffs must allege with particularity how WaMu's alleged assistance was a substantial factor in bringing about their injury. *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1130 n. 81 ("The acts or omissions that comprise the necessary substantial assistance must be pleaded with specificity."). "Unadorned allegations" that the defendant provided substantial assistance are not enough. *Id.*

In this regard, Plaintiffs must allege not only what WaMu did to assist UTS in the alleged Ponzi scheme, but also how its assistance proximately caused the harm on which the primary liability is predicated. *Id.*; *Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001). Without a particularized showing of proximate cause, Plaintiffs have not pled substantial assistance. *Id.*

Plaintiffs' complaint is insufficient on both fronts. The totality of Plaintiffs' allegations in this regard is that WaMu received deposits and allowed withdrawals. Recognizing that WaMu had no duty to investigate or report suspicious activities, the clearing of transactions through WaMu is not substantial assistance.[7]

---

[7] Chase is mindful of the conclusion reached in *Casey* and other cases that "ordinary business transactions" provided by a bank can be considered substantial assistance if the bank actually knew the transactions were assisting the customer in committing a specific tort. However, that conclusion,

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

1    Moreover, the alleged assistance provided by WaMu was not "'a substantial

2    factor' in bringing about the injury purportedly suffered by . . ." Plaintiffs. *Neilson*,

3    290 F. Supp. 2d at 1129.  Plaintiffs do not allege that WaMu had any role in the

4    publication or creation of the advertisements that allegedly induced Plaintiffs to invest

5    in the Ponzi scheme or assisted UTS in any way other than normal banking activities.

6    *Compare Neilson*, 290 F. Supp. 2d at 1129 (bank helped induce investments and

7    served as a reference for its customer); *Marcelos v. Dominquez*, 2008 WL 2788173, at

8    *9-10 (N.D. Cal. July 18, 2008) (aider and abettor defendants, a title company and

9    lender, drafted and obtained plaintiff's signature on fraudulent loan documents).

10    Plaintiffs also allege no direct contact between WaMu and Plaintiffs.  *Compare*

11    *Marcelos*, 2008 WL 2788173, at *9 (distinguishing *Casey* because, in that case, the

12    banks had no direct dealings with the plaintiffs, but, in *Marcelos*, the defendants had a

13    relationship with the plaintiff and were accused of defrauding the plaintiff directly).

14    Here, the harm was caused solely by the fraud allegedly committed by UTS.  Plaintiffs

15    would be in the same position if they had sent funds to any bank or directly to UTS.

16    Accordingly, Plaintiffs fail to allege substantial assistance.

17    **C.**    **Plaintiffs' conspiracy claim fails to state a claim upon which relief**

18         **can be granted.**

19    As with their other claims, Plaintiffs rely upon conclusory allegations to support

20    their conspiracy claim.  Under *Ashcroft* and *Twombly*, as well as Rule 9(b), such

21    allegations are inadequate either to allege the requisite agreement or the requisite

22    intent.

23    **1.**    **Plaintiffs fail to plead adequately that an agreement existed.**

24    To survive dismissal, Plaintiffs must plead more than conclusory assertions of a

25    "conspiracy" or an "agreement."  *Brant v. Kipp*, 2009 WL 1444691 at *19 (C.D. Cal.

26    May 21, 2009).  Plaintiffs must "provide the particulars of when, where, or how the

27    ─────────────────────────────────────

if applied without limits, would conflate the two elements of aiding and abetting, and ignore the
28    word "substantial" in the "substantial assistance" element of the tort.  Chase submits that simple
debits and credits in an account are not substantial assistance as a matter of law.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

9

1   alleged conspiracy occurred." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107

2   (9th Cir. 2003). Failure to do so warrants dismissal.

3        For example, in *Brant,* the court dismissed a conspiracy claim that was based on

4   the "conclusory allegation that the defendants 'conspired and agreed to' do certain

5   things, including defraud Plaintiff." *Id.* at *19. The court found that the absence of

6   "specific, factual allegations" rendered the complaint defective supporting the

7   existence of an agreement even under the notice pleading of Rule 8(a), much less the

8   heightened standard of Rule 9(b). *Id.*; *see also Vess*, 317 F.3d at 1107 (affirming

9   dismissal of a fraudulent conspiracy claim which failed to "provide the particulars of

10   when, where, or how the alleged conspiracy occurred.").

11        Plaintiffs' allegations fare no better than those pled in *Brant* and *Vess*. Like the

12   plaintiff in *Brant*, Plaintiffs plead only the bare assertion of an agreement: "Defendant

13   entered into an agreement with the unnamed co-conspirators to commit the wrongful

14   acts alleged herein." Comp. ¶ 118. And like the plaintiff in *Vess*, Plaintiffs fail

15   entirely to "provide the particulars of when, where, or how the alleged conspiracy

16   occurred." There are no facts as to whom within WaMu reached an agreement with

17   UTS or the other alleged conspirators to defraud investors, when such agreement took

18   place, what benefits WaMu obtained from such agreement, or what acts WaMu agreed

19   to perform. Accordingly, Plaintiffs fail to state a conspiracy claim.

20           **2.**    **Plaintiffs fail to allege the requisite knowledge and intent.**

21        To state a claim for conspiracy, Plaintiffs must also allege facts showing that

22   WaMu had "knowledge of the planned tort . . . combined with intent to aid in its

23   commission." *Kidron v. Movie Acquisition Corp.,* 40 Cal. App. 4th 1571, 1582

24   (1995). Moreover, "conspiracies cannot be established by suspicions [and] . . . mere

25   association does not make a conspiracy." *Id.* Thus, the analysis as to this claim is

26   virtually identical to the analysis of Plaintiffs' aider and abettor claim, and it fails for

27   the same reasons.

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

10

As explained above, although Plaintiffs allege in conclusory fashion that WaMu was aware of the fraud, their factual allegations show nothing more than suspicious activities that might have alerted WaMu of the Ponzi scheme.  Because suspicions and/or assistance provided without wrongful intent are inadequate (*id.*), the Court should dismiss Plaintiffs' conspiracy claim.

**D.      Plaintiffs' allegations fail to state a claim under the UCL.**

**1.      Because the certificates of deposit allegedly purchased by Plaintiffs are securities, Plaintiffs fail to plead a UCL claim upon which relief can be granted.**

Both California and federal law include "certificates of deposit" under the definition of a "security."  Cal. Corp. Code § 25019; 15 U.S.C. § 77b(1).  Section 17200, however, does not apply to securities transactions.  *Bowen v. Ziasun Technologies, Inc.*, 116 Cal. App. 4th 777, 790 (2004) (affirming dismissal of UCL claim by investors who claimed that brokerage firms tricked them into investing in a Ponzi scheme); *see also Shearson Lehman Bros. v. Greenberg*, 60 F.3d 834, 836 (9th Cir. 1995) (affirming dismissal of UCL claim and noting that "Cal. Bus. & Prof. Code § 17200 is inapplicable to securities transactions"); *Scognamillo v. Credit Suisse First Boston LLC*, 2005 WL 2045807, at *36-37 (N.D. Cal. Aug. 25, 2005) (dismissing UCL claim and noting that "several courts have concluded that section 17200 does not apply to securities transactions, and it appears that no court has held to the contrary.").[8]

The claim in *Bowen* virtually was identical to the claim here.  Two investor plaintiffs brought UCL claims alleging that a brokerage firm tricked them into purchasing stock in a "pyramid" scheme.  *Id.*  Because the plaintiffs' investments were in securities, the court of appeals affirmed the trial court's dismissal.  The Court should dismiss the UCL claim in this case for the same reason.  *Id.*

---

[8] *See also Dietrich v. Bauer*, 76 F. Supp. 2d 312, 351 (S.D.N.Y. 1999) (same); *Perera v. Chiron Corp.*, 1996 WL 251936, at *5 (N.D. Cal. May 8, 1996) (same).

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

There is no reason to deviate from the holding in *Bowen* here.  There is ample protection afforded to victims of securities fraud by the securities laws.  The UCL was intended for other purposes and should not be applied here.

### 2. Plaintiffs fail to plead the requisite causal connection between WaMu's alleged conduct and their injuries.

Even if Plaintiffs' UCL claim was not precluded because it is based on the purchase of a security, it is fatally defective because a plaintiff who brings a UCL claim must allege the defendants:  (1) had actual knowledge of the violation, and (2) took action to aid and encourage that activity.  *In re Firearm Cases*, 126 Cal. App. 4th 959, 982 (2005).  In *Firearm*, the plaintiffs were several California cities and counties which brought UCL claims against multiple manufacturers, distributors, and retailers of handguns, as well as their trade associations.  *Id.* at 967-68.  The plaintiffs alleged that the defendants' conduct of distributing firearms in a manner that enabled criminals to acquire them constituted a pattern of "unfair" conduct which violated the UCL.  *Id.* at 968-69.  More specifically, the plaintiffs alleged that the defendants marketed handguns using practices that encouraged sales to unauthorized users without adequately monitoring distributors and dealers or setting standards for distributors and dealers regarding how to sell handguns legally and responsibly.  *Id.* The court rejected the plaintiffs' UCL claim because the plaintiffs did not allege that the defendants:  (1) had actual knowledge that specific retailers were illegally supplying guns to the criminal gun market; *and* (2) took any action to aid or encourage that activity.  *Id.* at 984-85.

*Emery v. VISA Internat. Service Assn.*, 95 Cal. App. 4th 952 (2002) is also instructive.  There, the plaintiff brought a UCL claim against VISA because illegal foreign lotteries had mailed solicitations to California citizens that allowed for payment by VISA bank cards.  *Id.* at 954-55.  The court held that a UCL claim "cannot be predicated on vicarious liability."  *Id.* at 960.  Rather, the claim must contain an element of the defendant's "personal 'participation in the unlawful

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

12

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  practices' and 'unbridled control' over the practices that are found to violate [the

2  UCL]."  *Id.*  The court found that VISA exercised no control over the acts of those

3  preparing the lottery solicitation and that VISA had no relationship with the merchants

4  who did.  *Id.*[9]  Thus, the elements that must be alleged are virtually identical to those

5  required to plead viable aider and abettor and conspiracy claims -- knowledge of the

6  wrong and knowing participation.

7  　　　　*Firearm* and *Emery* make clear that Plaintiffs have not stated a UCL claim

8  against Chase.  Plaintiffs do not, and cannot, allege that WaMu solicited investments

9  in the Ponzi scheme or exercised control over the scheme or was even aware of it.  As

10  in *Firearm* and *Emery*, there is "no hint" that WaMu participated or encouraged the

11  investments or that it had any control over the wrongful conduct.  Accordingly,

12  Plaintiffs' UCL claim fails.  126 Cal. App. 4th at 984.

13  　　　　**E.　　Plaintiffs' allegations are not plausible.**

14  　　　　Under *Ashcroft* and *Twombly*, the second prong of the pleading standard is that

15  a plaintiff must state a claim that is plausible.  *Ashcroft*, 129 S.Ct. at 1949; *Twombly*,

16  550 U.S. at 570.

17  　　　　　　　　The plausibility standard is not akin to a "probability
18  　　　　　　　　requirement," but it requires more than a sheer possibility
　　　　　　　　　that a defendant has acted unlawfully . . . .　Where a
19  　　　　　　　　complaint pleads facts that are "merely consistent with" a
　　　　　　　　　defendant's liability, it "stops short of the line between
　　　　　　　　　possibility and plausibility of entitlement to relief."

20

21  *Twombly*, 550 U.S. at 557.  Without specific allegations that state a plausible claim for

22  relief, Plaintiffs "[do] not unlock the doors of discovery. . . ."  *Ashcroft*, 129 S.Ct. at

23  1950.

24  　　　　In *Ashcroft*, the Court found the plaintiff's allegations were not plausible,

25  because the alleged conduct was consistent not only with discrimination, but also with

26  a genuine effort by Ashcroft and Mueller to detain suspected terrorists.  129 S.Ct. at

27

28  　　[9] The court also rejected the plaintiff's contention that VISA somehow aided and abetted the
illegal conduct by failing to prevent it.  *Id.* at 965-66.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   1952.  That Ashcroft's and Mueller's actions *conceivably* could have been driven by

2   discriminatory intent would be "merely consistent with" liability, and therefore not

3   plausible.  *Id.*

4        Plaintiffs' allegations here also fail under the plausibility standard.  Plaintiffs'

5   allegations with respect to WaMu's activities are consistent with normal account

6   services -- deposits and withdrawals from bank accounts -- without any knowledge of

7   wrongdoing.  That WaMu conceivably provided those services with knowledge of the

8   fraud or with suspicion that something was "fishy" is not enough.  Thus, Plaintiffs'

9   allegations stop short of the line between the possibility and probability of entitlement

10  to relief, and they therefore fail to state a claim upon which relief can be granted.[10]

11

12  **III.   CONCLUSION**

13       For the foregoing reasons, Plaintiffs have failed to plead claims upon which

14  relief can be granted.  Pursuant to Rule 12(b)(6), Chase respectfully requests that the

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  

25  [10] The mere desire to collect fees is no indication of fraudulent intent.  *Melder v. Morris*, 27
    F.3d 1097, 1104 (5th Cir. 1994) (motive to earn fees is not sufficient to sustain an inference of

26  fraudulent intent; a contrary conclusion "would make a mockery of Rule 9(b)").  Without some type
    of specific, ungeneralized motive, Plaintiffs' claims simply make no sense.  Indeed, it "strains

27  reason" to assert that WaMu "would jeopardize its reputation [and] subject itself to civil liability . .
    ." simply to earn banking fees from UTS.  *In re Philip Serv. Corp. Sec. Lit.*, 383 F. Supp. 2d 463,

28  469-70 (S.D.N.Y. 2004); *Melder*, 27 F.3d at 1104, n. 10.  Claims based on strained reasoning do not
    meet the plausibility standard.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

1   Court dismiss Plaintiffs' claims.  Finally, Chase respectfully requests that the Court

2   award it such other and further relief to which it may show itself justly entitled.

3

4                                    Respectfully submitted,

5

6   Dated:  December 23, 2009         By: /s/    Phillip J. Eskenazi

7                                    Phillip J. Eskenazi (SBN 158976)
                                     peskenazi@hunton.com
8                                    **HUNTON & WILLIAMS LLP**
                                     550 South Hope Street, Suite 2000
9                                    Los Angeles, California 90071-2627
                                     Telephone:   (213) 532-2000
10                                    Facsimile:    (213) 532-2020

11                                    and

12

13

14                                    Charles A. Gall *(Pro Hac Vice Application Pending)*
                                     cgall@hunton.com
15                                    James W. Bowen *(Pro Hac Vice Application Pending)*
                                     jbowen@hunton.com
16                                    **HUNTON & WILLIAMS LLP**
                                     1445 Ross Avenue, Suite 3700
17                                    Dallas, Texas  75202
                                     Telephone:   (214) 979-3000
                                     Facsimile:    (214) 880-0011
18
19                                    Attorneys for Defendant
                                     JPMORGAN CHASE BANK, N.A.
20

21

22

23

24

25

26

27

28

64726.001200 EMF_US 29286415v2
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627