1  **NIALL P. McCARTHY** (SBN 160175)
   nmccarthy@cpmlegal.com
2  **ANNE MARIE MURPHY** (SBN 202540)
   amurphy@cpmlegal.com
3  **ARON K. LIANG** (SBN 228936)
   aliang@cpmlegal.com
4  **COTCHETT, PITRE & McCARTHY**
   840 Malcolm Road, Suite 200
5  Burlingame, CA 94010
   Tel:    (650) 697-6000
6  Fax:   (650) 697-0577

7  **STEVEN N. BERK** (*admitted pro hac vice*)
   steven@berklawdc.com
8  **BERK LAW PLLC**
   1225 15th Street, N.W.
9  Washington D.C. 20005
   Tel:    (202) 232-7550
10 Fax:   (202) 232-7556

11 **KEITH L. MILLER** (*admitted pro hac vice*)
   klm4law@aol.com
12 Twenty One School Street
   Boston, MA 02108
13 Tel:    (617) 523-5803
   Fax:   (617) 523-4563
14 *Counsel for the Benson, Baloch and*
   *Gursahaney Plaintiffs and the Putative Class*

**GILMUR R. MURRAY** (SBN 111856)
gmurray@murrayhowardlaw.com
**DEREK G. HOWARD** (SBN 118082)
dhoward@murrayhowardlaw.com
**MURRAY & HOWARD, LLP**
900 Larkspur Landing Circle, Suite 103
Larkspur, CA 94936
Tel:    (415) 461-3200
Fax:   (415) 461-3208
*Counsel for the Lowell Plaintiff and the*
*Putative Class*

15

16                          **UNITED STATES DISTRICT COURT**

17                        **NORTHERN DISTRICT OF CALIFORNIA**

18                             **SAN FRANCISCO DIVISION**

19 **KIMBERLY BENSON, KARIMDAD**          )   Civil Action No. CV 09-5272 (EMC)
   **BALOCH** and **NEERJA JAIN**          )   Civil Action No. CV 09-5560 (EMC)
20 **GURSAHANEY**, individually and on     )
   behalf of all others similarly situated, )
21                                          )
            vs.                             )   **PLAINTIFFS' JOINT OPPOSITION TO**
22                                          )   **MOTION TO TRANSFER VENUE**
   **JPMORGAN CHASE BANK, N.A.,**          )
23 individually and as successor in interest of )
   **WASHINGTON MUTUAL, INC.**             )
24 _____     )   Date:    February 17, 2010
                                            )   Time:    10:30 a.m.
25 **JOHN ALEXANDER LOWELL,**              )   Place:   Courtroom C
   individually and on behalf of all others )   Hon.:    Magistrate Edward M. Chen
26 similarly situated,                      )
                                            )
27         vs.                              )
                                            )
28 **JPMORGAN CHASE BANK, N.A.,**          )
   individually and as successor in interest of )
   **WASHINGTON MUTUAL, INC.**             )
                                            )

1

## **TABLE OF CONTENTS**

2   I.      INTRODUCTION AND SUMMARY ............................................................................1

3   II.     FACTUAL BACKGROUND ........................................................................................2

4   III.    PROCEDURAL BACKGROUND..................................................................................6

5   IV.     ARGUMENT..............................................................................................................9

6           A.      Legal Standard ...............................................................................................9

7           B.      Federal Comity Does Not Warrant Transfer of the California Actions to the
8                   Northern District of Texas ............................................................................10

9                   1.      Parties are Not Identical...................................................................11

10                  2.      Issues are Not Identical.....................................................................12

11                  3.      JPMorgan's Forum Shopping Does Not Support Transfer.......................14

12                  4.      MDL Petition ...................................................................................15

13          C.      Public and Private Factors Favor Plaintiffs and Support Denial of JPMorgan's
                    Motion to Dismiss.........................................................................................15

14                  1.      Private Interest Factors Favor Litigation in California...............................16

15                  2.      Public Interest Factors Favor Litigation in this District.............................19

16                  3.      Plaintiffs are Residents of California.......................................................19

17                  4.      JPMorgan Fails to Meet Its Heavy Burden of Showing the Private and
18                          Public Interest Factors Favor Transfer.....................................................20

19   V.      CONCLUSION..........................................................................................................21

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Cases**

*Alchemist Jet Air, LLC v. Century Jets Aviation, LLC*
2009 U.S. Dist. LEXIS 49472 at * 13 (N.D. Ill. June 12, 2009) ...................................14

*Alltrade, Inc. v. Uniweld Products, Inc.*
946 F.2d 622 (9th Cir. 1991) ....................................................................................10, 14

*Best W. Int'l, Inc. v. Patel*
2008 U.S. Dist. LEXIS 19797 at *10 (D. Ariz. Mar. 3, 2008) ...............................10, 14

*Central States, S.E. & S.W. Areas Pension Fund v. Salasnek Fisheries, Inc.*
977 F. Supp. 888 (N.D. Ill.1997) ....................................................................................17

*Central States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co.*
203 F.3d 442 (7th Cir. 2000) ...........................................................................................10

*Charter Oak Fire Ins. Co. v. Broan-Nutone, LLC*
294 F. Supp. 2d 218 (D. Conn. 2003) .............................................................................17

*Christensen Hatch Farms, Inc. v. Peavey Co.*
505 F. Supp. 903 (D. Minn. 1981)....................................................................................16

*Decker Coal Co. v. Commonwealth Edison Co.*
805 F.2d 834 (9th Cir. 1986) .................................................................................9, 16, 20

*Dwyer v. General Motors Corp.*
853 F. Supp. 690 (S.D.N.Y. 1994) ..................................................................................18

*Gulf Oil Corp. v. Gilbert*
330 U.S. 501 (1947).....................................................................................................9, 16

*In re Nine Mile Ltd.*
692 F.2d 56 (8th Cir. 1982) .............................................................................................16

*Int'l Painters v. Tri-State Interiors, Inc.*
357 F. Supp. 2d 54 (D. D.C. 2004)..................................................................................19

*Kedia v. Jamal*
2007 U.S. Dist. LEXIS 30343 at *8 (3d Cir. April 25, 2007) ...............................10, 12

*Koch Engineering Co. v. Monsanto Co.*
621 F. Supp. 1204 (E.D. Mo. 1985) ................................................................................10

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*
523 U.S. 26 (1998)...........................................................................................................15

*Lou v. Belzberg*
834 F.2d 730 (9th Cir. 1987) ...........................................................................................20

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*
583 F.3d 656 (9th Cir. 2009) ...........................................................................................16

ii

*Miracle v. N.Y.P. Holdings, Inc.*
87 F. Supp. 2d 1060 (D. Haw. 2000) ......................................................................................18

*Pacesetter Systems, Inc. v. Medtronic, Inc.*
678 F.2d 93 (9th Cir. 1982) .....................................................................................................10

*Persepolis Enterprise v. UPS, Inc.*
2007 U.S. Dist. LEXIS 68699 (N.D. Cal. Sept. 7, 2007) ..........................................................13

*Piper Aircraft Co. v. Reyno*
454 U.S. 235 (1981)...................................................................................................................19

*Schwarz v. National Van Lines, Inc.*
317 F. Supp. 2d 829 (N.D. Ill. 2004) .......................................................................................14

*Sony Computer Entertainment America Inc. v. American Medical Response, Inc.*
2007 U.S. Dist. LEXIS 24294 at *5-6 (N.D.Cal. Mar. 13, 2007) ..............................................10

*United Mort. Corp. v. Plaza Mort. Corp.*
853 F. Supp. 311 (D. Minn. 1994)...............................................................................................9

*Van Slyke v. Capital One Bank*
503 F. Supp. 2d 1362 (N.D. Cal. 2007) ........................................................................16, 18, 19

*Varsic v. United States District Court*
607 F.2d 245 (9th Cir. 1979) ....................................................................................................19

*Z-Line Designs, Inc. v. Bell'O Int'l LLC*
218 F.R.D. 663 (N.D. Cal. 2003)...............................................................................................10

**Statutes**

28 U.S.C. § 1404......................................................................................................................1, 2, 15

29 U.S.C. § 1132(e)(2)...................................................................................................................19

Cal. Bus. & Prof. Code §§ 17200, *et. seq* ...................................................................................13

**Rules**

Fed. R. Civ. P. 59...........................................................................................................................14

Judicial Panel on Multidistrict Litigation ("JPML") Rule 7.6(b) ..................................................15

1

## SUMMARY OF ISSUES PRESENTED

2      (1)     Has Defendant JPMorgan met its heavy burden of showing that the

3   Northern District of California is an inconvenient forum?

4      (2)     Has Defendant JPMorgan shown that the *Gruenberg* complaint and the

5   *Benson* and *Lowell* complaints involve "identical" parties and "identical issues", even

6   though the *Benson* and *Lowell* complaints are significantly broader then the now

7   dismissed *Gruenberg* complaint?

8      (3)     Should the motion to transfer venue be denied due to JPMorgan's efforts to

9   forum shop?

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.   **INTRODUCTION AND SUMMARY**

2      The Motion to Transfer the *Benson* and *Lowell* actions to a Dallas, Texas

3   courtroom does not and cannot assert that Plaintiffs' choice of forum is improper.  In

4   bringing this motion, Defendant JPMorgan Chase Bank, N.A. ("JPMorgan") must carry a

5   heavy burden in order to disturb Plaintiffs' choice of forum.  JPMorgan has failed to meet

6   that burden. Moreover, JPMorgan cannot show any inconvenience that may arise from

7   defending itself in the Northern District of California.  To the contrary, with the acts in

8   question squarely occurring within this Northern District, and with key witnesses being

9   located here, the Northern District of California is clearly the appropriate forum for the

10   rights of the Plaintiffs and Class members to be adjudicated.

11      The ability to bring a case in the venue of one's choice is an important right that

12   should not be ignored without good cause.  Moreover, throughout both this Motion to

13   Transfer and the concurrently filed Motion to Dismiss, JPMorgan ignores that the two

14   complaints filed in this district have substantial factual allegations that demonstrate that

15   JPMorgan had ***actual knowledge*** of the Millennium Ponzi scheme but nevertheless still

16   participated in the fraud.  These additional factual allegations are critical because

17   JPMorgan is seeking to bury factual distinctions by relying on the dismissal of a factually

18   different complaint in the action entitled *Litson-Gruenberg v. JP Morgan Chase & Co.*,

19   Case No. 7:09-CV-056-0 ("*Gruenberg* Action").

20      This motion is nothing more than procedural gamesmanship aimed at diverting two

21   legitimate and properly filed Northern District actions to a faraway court where a factually

22   different complaint was dismissed with prejudice.  The motion to transfer is not based on

23   any legitimate interest in federal comity or on the requirements of 28 U.S.C. § 1404.

24   Rather, by stating that the Complaints at bar are "substantively identical," –a claim that is

25   contradicted by a comparison of these two California complaints to the *Gruenberg*

26   complaint—it is apparent that JPMorgan is playing fast and loose in order to bring these

27   cases before a Court where it obtained a favorable result in a different case.  As we

28   explain below, the California actions and the Texas action are not "substantively

1

1 | identical" and the entire premise of the motion is false. (Defendants' Motion to Transfer
2 | ("Mot. Tr.") at 3). More to the point, this type gamesmanship does not qualify as "good
3 | cause" justifying this Court's disturbance of the Plaintiffs' right to select the appropriate
4 | forum.

5 | In short, transfer of this action to the Northern District of Texas is unwarranted
6 | either under a general federal comity theory or pursuant to 28 U.S.C. § 1404. Plaintiffs in
7 | both cases are California residents who properly seek to have their claims adjudicated in a
8 | California court. That right trumps the tactical advantage JPMorgan seeks from having
9 | the case adjudicated in the forum of its choice.

10 | ## II. FACTUAL BACKGROUND

11 | This case arises out of the Millennium Ponzi scheme, based out of Napa,
12 | California, that lasted for over four years and cost innocent investors over $250 million in
13 | losses. This action alleges that WaMu, through its Napa branch offices, knowingly and
14 | actively participated in the Millennium Ponzi scheme, in which Plaintiffs and the Class
15 | were defrauded into investing millions of dollars in fake Certificates of Deposit ("CDs")
16 | that were purportedly issued by Millennium Bank and United Trust of Switzerland, S.A.
17 | The founders of the Millennium Ponzi scheme claimed that these fake CD's could achieve
18 | exceptionally high rate of returns because they were "the benefactor of Swiss banking . . .
19 | as well as the vast global investment network that United Trust of Switzerland S.A. has
20 | built over the last 75 years." *See* Exh. A (Benson Complaint), attached to the Declaration
21 | of Aron K. Liang ("Liang Decl."), ¶ 1.

22 | The money from investors was never actually invested. Instead, most of that
23 | money was sent in the form of personal checks to the Global Services offices in Napa,
24 | California and then deposited in an account at the WaMu Napa branch offices. *See* Liang
25 | Decl., Exh. A, ¶ 50. The sole authorized signatures on that account were Jackie and Kristi
26 | Hoegel, who handled the banking side of the Millennium Ponzi scheme. *See* Liang Decl.,
27 | Exh. B (SEC Complaint), ¶ 41[1]. Tamara Miller and Bianca Greeves, two senior WaMu

28 | [1] The SEC complaint is attached as Exhibit D to the *Benson* complaint.

2

1  officers based in Napa, knew that no money was being invested but was instead being

2  diverted for personal expenses or to off-shore accounts. *See* Liang Decl., Exh. A, ¶¶ 51,

3  97.

4      The key WaMU account used by the Millennium Defendants[2] was opened at a

5  WaMu branch office in Las Vegas in the name of a Nevada LLC created on the same day

6  and using a business address in Napa, California. *Id.* at ¶¶ 46-49. According to a

7  confidential source close to William Wise, the mastermind of Millennium, the WaMu

8  accounts were opened in Las Vegas after at least three other banks had refused to conduct

9  further business with Millennium. *Id.* at ¶ 44.

10      Between 2004 and 2008, Tamara Miller and Bianca Greeves had extensive contact

11  with the Hoegels and were instrumental to the success of the scheme. According to Kristi

12  Hoegel, she would visit the WaMu Napa branch offices frequently and occupied an

13  inordinate amount of their time. *Id.* at ¶ 52. The Hoegels and Global Services were one

14  of their largest customers. *Id.* at ¶ 97. Maintaining the Millennium account was not only

15  important to WaMu generally but more importantly, was important to the success of the

16  WaMu Napa branch offices, Tamara Miller and Bianca Greeves. Investor checks

17  typically listed "UT of S," "United Trust of Switzerland," or "United Trust of Switzerland

18  S.A.," as the payee. *See* Liang Decl., Exh. B at ¶ 42. The memo lines of the checks often

19  referenced "CD" and stated a tern and an interest rate, included the words Millennium

20  Bank, the name of a Millennium Bank CD salesman, and/or the term "investment" *Id.*

21      In addition, Tamara Miller personally oversaw the many wire transfers executed by

22  Kristi Hoegel when she was in the bank, requiring hours of her time. *See* Liang Decl.,

23  Exh. A, ¶¶ 52, 97. Tamara Miller personally knew that all of the transactions involved a

24  single WaMu bank account. She knew that the monies coming in were purportedly being

25  invested in CDs and also knew that the money going out was being transferred off-shore

26  
27  [2]    The "Millennium Defendants" refer to William Wise, Jacqueline Hoegel, Kristi Hoegel, Millennium Bank, United Trust of Switzerland, S.A., UT of S, LLC, United T of S, LLC and Sterling I.S., LLC. The WaMu account that was used to perpetuate the fraud was for one of the
28  Nevada LLCs, UT of S, LLC ("UT of S").

1    or for personal expenses. *Id.* From 2004 to 2008, Tamara Miller knew that all investor

2    funds were commingled in a single account at WaMu, which was not used for investment

3    purposes but were instead disbursed to, among others, William Wise, Jackie and Kristi

4    Hoegel, the relatives of William Wise and the Hoegels and entities controlled by William

5    Wise and the Hoegels. *See* Liang Decl., Exh. B, ¶ 47.

6         Specifically, Tamara Miller knew that the following large amounts of money were

7    being wired out to the following entities and individuals:

8         (1)    William Wise: $12.3 million

9         (2)    Kristi Hoegel: $965,000

10        (3)    Jackie Hoegel (Kristi Hoegel's mother): $854,000

11        (4)    Brijesh Chopra: $90,000

12        (5)    Philippe Angeloni: $20,000

13        (6)    Lynn Wise (William Wise's wife): $1.68 million

14        (7)    Daryl Hoegel (Jackie Hoegel's husband): $130,000

15        (8)    Ryan Hoegel (Kristi Hoegel's brother): $34,000

16        (9)    Laurie Walton (William Wise's secretary): $323,000

17        (10)   United T of S, LLC: $225,000

18        (11)   Sterling I.S., LLC: $504,000

19        (12)   Matrix Administration, LLC: $476,000

20        (13)   Jasmine Administration, LLC: $18,000

21        (14)   Millennium Financial Group: $20,000

22        (15)   United Trust of Switzerland, S.A.: $2.6 million

23        (16)   UT of S, LLC (operating expenses): $1.1 million.

24        *Id.* at ¶ 48.

25        The sheer volume of bank transactions required by the Hoegels made their

26   transactions memorable. It was because the Hoegels occupied so much bank time that

27   Bianca Greeves recommended the installation of a remote banking platform at the Global

28   Services offices. *Id.* at ¶ 67. It is uncontroverted evidence that WaMu, by Jennifer

4

1   Blevins, Senior Specialist in the Business Treasury Services Department gained actual

2   knowledge of the fraud based on two audits she conducted.  In February of 2008, after

3   conducting a thorough audit of the Global Services operations, WaMu provided the

4   Hoegels with a "cash management transfer" software ("CMT") system that permitted the

5   Hoegels to effect outgoing wire transfers globally from the Napa office.  *Id.* at ¶ 67.  In

6   September of 2008, just nine months later, Blevins was responsible for a second WaMu

7   audit of the Global Services operation prior to providing a "remote deposit capture"

8   ("RDC") system, a scanning machine and banking interface, which would permit the

9   Hoegels to deposit investors' checks directly from their Napa office without any WaMu

10  oversight or supervision.  *Id.* at ¶ 73.

11          Providing these systems to an operation the size of Global Services is

12  unprecedented.  *Id.* at ¶ 68.  Specifically, because these programs allow a business  to act

13  like a "bank within a bank", audits relating to the provision of these services are taken

14  seriously and conducted thoroughly.  *Id.* at ¶ 5.  WaMu, through Blevins, gained actual

15  knowledge of the true nature of the fraud through these two audits but nevertheless

16  continued to willingly participate in the fraud.  *Id.* at ¶ 70.

17          WaMu bank records, that were available to Tamara Miller and Bianca Greeves,

18  establish that: (1) no investor funds were used for legitimate banking or investment

19  activities; (2) investor funds were commingled in the account; (3) money movement in the

20  WaMu account included transfers to and from each of the Millennium Defendants, linking

21  all of them to the scheme; (4) millions of dollars of new investor monies were used to

22  make apparent Ponzi payments to earlier investors; (5) each of the individual Millennium

23  Defendants diverted investor funds for their personal use (totaling approximately $14

24  million); (6) friends and relatives of the Millennium Defendants received from tens of

25  thousands to millions of dollars of investor funds for no consideration; and (7) investor

26  funds were also used to pay personal expenses, including at least $2.8 million in credit

27  card expenses, $820,000 in auto expenses, $870,000 in aviation expenses, and $90,000 in

28  wine expenses (totaling approximately $4.6 million).  *See* Liang Decl., Exh. B, ¶ 49.

5

1 Tamara Miller and Bianca Greeves knew all of these facts due to their close interaction
2 with the Millennium Ponzi scheme over a four year period.

3                      **III.    PROCEDURAL BACKGROUND**

4          Despite the fact that there was no connection between the Millennium Ponzi
5 scheme and the Northern District of Texas, on March 26, 2009, the SEC filed an action
6 against Millennium Bank, William J. Wise, Jacqueline Hoegel, Kristi Hoegel, United
7 Trust of Switzerland, S.A., UT of S. LLC, and various other individuals and entities
8 related to the Millennium Ponzi scheme entitled *Securities and Exchange Commission v.*
9 *Millennium Bank, et. al.*, Case No. 7:09-CV-00050-0 (the "Receivership Action"),
10 pending before District Judge Reed O'Connor. *See* Defendants' Request for Judicial
11 Notice ("Def. RJN"), Exhs. 1 and 2.

12          The Hoegels are California residents. William Wise is a Canadian citizen who
13 resided in North Carolina. JPMorgan's primary connection to the Millennium Ponzi
14 scheme is through its Napa, California branch offices. On March 25, 2009, Judge
15 O'Connor named Richard B. Roper as the receiver ("Receiver") and enjoined all
16 complaints against the defendants named in the Receivership Action. As JPMorgan was
17 not named as a defendant in the Receivership Action, that order had *no impact* on any
18 lawsuits against JPMorgan. *See* Def. RJN at Exhs. 3 and 4.

19          The Receiver has obtained documents, cell phones and computers from the
20 defendants in the Receivership Action and has served subpoenas on JPMorgan and other
21 entities.[1] *See* Def. RJN at Exh 6; Mot. Tr. at 1. Plaintiffs have chosen to bring their claim
22 in the Northern District of California. The Electronically Stored Information (ESI),
23 apparently consisting of 5.46 terabytes of data seized by the Receiver will have to be
24 provided to counsel for the Plaintiffs in electronic format, regardless of venue. As all of
25 this information will be provided either on discs, hard drives, or otherwise transmitted
26 electronically, the current location of information is irrelevant to whether the case should
27 be moved away from where Plaintiffs filed the actions. Indeed, as the Receiver has
28 conceded publicly many times, despite its efforts "the total value of the Estate is likely to

6

1    be a mere fraction of the millions of dollars that would be to pay all anticipated claims

2    against the Estate." RJN Exh.6, Dec. 4, 2009 Receiver Statement. Accordingly, the

3    motion fails to make any factual showing how the pendency of the Receivership is

4    grounds to move these cases. The motion also fails to show how it would be more

5    convenient to provide ESI to counsel for Plaintiffs if the claim is brought in the Northern

6    District of California or the Northern District of Texas.

7         In addition, the motion is silent as to why it makes sense to move a case when the

8    key witnesses are located in this District. The key JPMorgan witnesses, including Ms.

9    Miller and Ms. Greeves are in California, as are the Hoegels. It would be easier to depose

10   them in California using documents and resources located nearby in California. Further,

11   the witnesses remain in subpoena power for both deposition and trial. On the other hand,

12   there are no relevant witnesses in the Northern District of Texas; only the Receiver is

13   located there. Any efforts to obtain evidence from the witnesses will be complicated by

14   moving the matter away to the Northern District of Texas, a forum that presently has no

15   connection to the dispute other than the SEC filing its receivership action in that forum.

16        On April 15, 2009, the *Gruenberg* complaint was filed in the Northern District of

17   Texas against JP Morgan Chase & Co. The *Gruenberg* complaint was far more limited in

18   its factual allegations. The only facts alleged to support her claim that JPMorgan had

19   actual knowledge of the Millennium Ponzi scheme were: (1) JPMorgan's failure to

20   perform due diligence; and (2) JPMorgan's violation of the Bank Secrecy Act and the

21   Anti-Money Laundering compliance program. *See* Defs. RJN, Exh. 9 (*Gruenberg*

22   Complaint), ¶¶ 29-40, 67-71. These allegations are thin in comparison to the allegations

23   presented by the Plaintiffs here.

24        On November 5, 2009 and November 23, 2009, respectively, the *Benson* and

25   *Lowell* complaints were filed in the Northern District of California against JPMorgan

26   Chase Bank, N.A. The factual allegations against JPMorgan in the two complaints are

27   significantly different. The key factual differences are the allegations that (1) JPMorgan

28   learned of the fraud due to the deep personal involvement of Tamara Miller and Bianca

7

1   Greeves with the alleged wrongful transactions related to the Millennium Ponzi scheme
2   and; (2) the fact that JPMorgan conducted two audits of the Global Services operation
3   before providing the company with access to specialized computer software and hardware
4   that transformed Global Services into a "bank within a bank." In conducting these audits,
5   JPMorgan gained actual knowledge of the fraud. *See* Liang Decl., Exh. A, ¶¶ 67-74; Exh.
6   C (*Lowell* complaint), ¶¶ 33-36; 45-51.

7   These facts must be construed in conjunction with the other facts alleged in the
8   *Benson* complaint and the *Lowell* complaint that were known to JPMorgan over the last
9   four years:

10  (1) William Wise, Jacqueline Hoegel, Kristi Hoegel, Millennium Bank, United
11  Trust of Switzerland, S.A., UT of S, LLC, Millennium Financial Group, UT of S, United
12  T of S, LLC and Sterling I.S., LLC (the "Millennium Defendants") had no legitimate
13  business purpose and were not licensed or registered to sell or promote securities;

14  (2) The Millennium Defendants had represented they were involved in the
15  securities business and were selling investments to Plaintiffs and other Class members;

16  (3) The Hoegels were depositing large sums of monies via suspicious bulk
17  check deposits. These checks were specifically designated by the Plaintiffs and Class
18  members as being for the purpose of purchasing CDs from the Millennium Defendants;

19  (4) These deposits from the Plaintiffs and other Class members were not
20  segregated but were being commingled in WAMU accounts used by the Millennium
21  Defendants;

22  (5) WAMU executed large wire transfers on behalf of the Millennium
23  Defendants to various offshore accounts in names other then those of the Millennium
24  Defendants to offshore banking havens, such as Switzerland and Trinidad and Tobago;

25  (6) WAMU's Napa branches expended considerable time and resources
26  managing the Millenium Defendants' WAMU accounts, which were amongst the largest
27  accounts handled at the Napa branches. At least one branch manager and commercial
28

8

1  banking officer were dedicated to monitoring and assisting in the banking transactions
2  executed by Wise and the Hoegels over a four year period;

3  (7)  Funds retained in the Millennium Defendants' WAMU accounts were being
4  misappropriated by Wise and the Hoegels for personal use.

5  *See* Liang Decl., Exh. A, ¶ 97.

6  On December 16, 2009, Judge O'Connor dismissed the *Gruenberg* action, meaning
7  there are currently no actions on behalf of individual investors currently in any District
8  Court other then the Northern District of California. *See* Def. RJN, Exh. 10. In fact, at
9  the time JPMorgan filed its Motion to Transfer, the only case currently pending before the
10 Northern District of Texas is the Receivership Action. The Receivership Action and the
11 *Benson* and *Lowell* Actions are distinct cases against different defendants. Thus,
12 transferring the California cases to the Northern District of Texas would serve no goal of
13 judicial efficiency. The fact that the Receiver was monitoring the *Gruenberg* action and
14 has issued statements about the *Gruenberg* action are meaningless as to the question of
15 venue. *See* Def. RJN, Exhs. 11 and 12.

16  ## IV.  **ARGUMENT**

17  **A.  Legal Standard**

18  JPMorgan does not assert that Plaintiffs' choice of forum is improper but instead,
19 the motion requests that the Court exercise its discretion to transfer the case to the
20 Northern District of Texas solely for tactical purposes. The motion is without good cause
21 and the Court should deny the motion.

22  In order to prevail on its Motion, Defendant must "make a ***strong showing of***
23 ***inconvenience*** to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v.*
24 *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (emphasis added); *United*
25 *Mort. Corp. v. Plaza Mort. Corp.*, 853 F. Supp. 311, 315 (D. Minn. 1994) (holding that
26 the party seeking transfer "bears the heavy burden of showing that the balance of factors
27 ***strongly*** favors the movant"); *citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).
28 Defendant's sole arguments for requesting that this Court perform the extraordinary act of

9

1    transferring this case to the Northern District of Texas are twofold: (1) the presence of the

2    Receivership in the Northern District of Texas and (2) the previous presence of the

3    *Gruenberg* action that has been dismissed. Neither argument meets the necessary burden,

4    nor are they equitable.

5    **B.    Federal Comity Does Not Warrant Transfer of the California Actions to the**
          **Northern District of Texas**

6

7        JPMorgan misstates and mischaracterizes the federal comity principle. The federal

8    comity principle applies only where the first-filed complaint and the subsequently filed

9    complaint are identical and involve ***identical parties and issues***. *Alltrade, Inc. v. Uniweld*

10   *Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991); *Pacesetter Systems, Inc. v. Medtronic,*

11   *Inc.* 678 F.2d 93, 95-96 (9th Cir. 1982). "The first to file rule however, is not one of

12   absolutes." *Koch Engineering Co. v. Monsanto Co.*, 621 F. Supp. 1204, 1207 (E.D. Mo.

13   1985). "[T]his 'first to file' rule is not a rigid or inflexible rule to be mechanically

14   applied, but rather is to be applied with a view to the dictates of sound judicial

15   administration." *Pacesetter*, 678 F.2d at 95. Courts "can, in the exercise of their

16   discretion, dispense with the first-filed principle for reasons of equity." *Alltrade*, 946 F.2d

17   at 628. When suits are filed by different litigants, each presumptively entitled to its

18   choice of forum, mechanical application of the "first-filed" doctrine is improper. *Central*

19   *States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d

20   442, 444-445 (7th Cir. 2000).[2]

21       In applying the first-to-file rule, a court looks to three threshold factors set forth in

22   *Alltrade*: (1) the chronology of the two actions; (2) the similarity of the parties, and (3) the

23   similarity of the issues. *Sony Computer Entertainment America Inc. v. American Medical*

24   *Response, Inc.*, 2007 U.S. Dist. LEXIS 24294 at *5-6 (N.D.Cal. Mar. 13, 2007); *see also*

25   *Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003); *Best W.*

26   *Int'l, Inc. v. Patel*, 2008 U.S. Dist. LEXIS 19797 at *10 (D. Ariz. Mar. 3, 2008). The

27   "first-filed" doctrine should be applied narrowly to "truly duplicative" proceedings.

28   *Kedia v. Jamal*, 2007 U.S. Dist. LEXIS 30343 at *8 (3d Cir. April 25, 2007). While the

1  *Gruenberg* action and the SEC's Receivership Action --which seeks an entirely different

2  type of recovery against other defendants--were filed prior to the *Benson* action, the other

3  two factors: (1) identical parties and (2) identical issues are not present here. As such,

4  denial of this motion is warranted.

5      ## 1.  **Parties are Not Identical**

6      The parties in the now dismissed *Gruenberg* Action, the *Benson* and *Lowell*

7  Actions and the Receivership Action are ***different***. They are not "substantively identical."

8  (Mot. Tr. at 3). First, neither the Plaintiffs and the Defendants are the same. Second,

9  while the definitions of the Class are similar, they are not identical. In the *Gruenberg*

10 complaint, the Class is defined as "all those who invested in the Ponzi scheme which is

11 the subject of *Securities and Exchange Commission v. Millennium Bank et al*, case

12 number 7:09-CV-00050-O, currently pending before this Court . . .", explicitly defining

13 the Class so that her case would be identical in scope of the Receivership Action. Both

14 the *Benson* and *Lowell* complaints define the proposed Class more specifically, focusing

15 on those persons or entities in the United States who during a select time period purchased

16 specific securities from certain Millennium Defendants. In both the *Benson* Complaint and

17 the *Lowell* Complaint, the class definition is defined as follows:

18
19      **"All persons or entities in the United States who, between July 1, 2004 to the present, purchased or otherwise acquired a purported Certificate of Deposit ("CD") from or through Millennium, UTS and/or one of the Nevada LLCs."**
20

21     This Class definition focuses on certain investors in the Millennium Ponzi scheme

22 and was designed so as not to be exactly coextensive with the Receivership Action.

23     Secondly, the Defendant is not the same. The *Gruenberg* action is against

24 JPMorgan Chase & Co. while the *Benson* and *Lowell* actions are proceeding against

25 JPMorgan Chase Bank, N.A. Moreover, the *Gruenberg* Action has been dismissed and

26 thus there is no currently pending action against either JPMorgan Chase & Co. or

27 JPMorgan Chase Bank, N.A. and thus no danger of inconsistent rulings or judgments and

28 no danger of overlapping activities. Plaintiffs here have pled a viable complaint, as

11

1  demonstrated in their Opposition to Defendant JPMorgan's Motion to Dismiss, that is
2  vastly different from the *Gruenberg* complaint. Plaintiffs should not be transferred due to
3  an action that is no longer even pending. No judicial economy will be gained from such a
4  transfer.

5        Next, JPMorgan tries to argue that "potential" claims against the Millennium
6  Defendants means that the Receivership Action and the *Benson* and *Lowell* actions have
7  the same defendants. This argument is just plain wrong. The California Plaintiffs have
8  brought **no claims** against the Millennium Defendants. The case law relating to the "first-
9  filed" doctrine states that it should be interpreted narrowly and only when the parties are
10  the same. *See Kedia*, 2007 U.S. Dist. LEXIS 30343 at *8. JPMorgan cites no case law
11  for the proposition that the "possibility" of same parties justifies application of the "first-
12  filed" doctrine. Moreover, it is clear that the Receivership Action and the California
13  Actions seek two different forms of relief, one seeks recovery from the Millennium
14  Defendants while the cases here seek recovery from JPMorgan, as a co-conspirator in the
15  Millennium Ponzi scheme. If the mere possibility that the Millennium Defendants might
16  be sued grants jurisdiction to the Northern District of Texas, then the Northern District of
17  Texas' specific order enjoining **only claims** against the Millennium Defendants would be
18  rendered meaningless and any cause of action even tangentially related to the Millennium
19  Defendants would be subject to stay and transfer.

20        **2.**    **Issues are Not Identical**

21        The issues in the *Benson* and *Lowell* actions are not identical to those in the now
22  dismissed *Gruenberg* action or the Receivership Action and there is no danger of
23  inconsistent judgments. The *Gruenberg* action is far more limited then the California
24  actions, basing their entire complaint around the lack of due diligence conducted by
25  JPMorgan. Critically, the *Gruenberg* action fails to allege how JPMorgan gained actual
26  knowledge of the Millennium Ponzi scheme because of the direct personal interactions
27  between Tamara Miller, Bianca Greeves (two senior WaMu officers) and the Hoegels
28  over a four year time period and through two audits conducted by JPMorgan prior to

12

1  providing the Millennium Defendants with a remote banking platform. These facts are

2  alleged in the *Benson* complaint. In his order granting the motion to dismiss in the

3  *Gruenberg* action, Judge O'Connor wrote, "the allegations are an artful manner of stating

4  that the Defendant should have known the Ponzi defendants' action. Plaintiff's factual

5  narrative is, at best, merely a story of suspicious activity that Plaintiff contends should

6  have provided Defendant notice of the ponzi scheme." *See* Def. RJN, Exh. 10, pg. 5. The

7  *Benson* and *Lowell* complaints, however, specifies the specific individuals who

8  participated in the Millennium Ponzi scheme, how they gained actual knowledge of the

9  scheme and how they assisted in the fraud. This difference is critical since a blind

10 invocation of the federal comity principle would allow JPMorgan to avoid having to

11 accept responsibility for its involvement in the Millennium Ponzi scheme because the less

12 detailed complaint, by accident of circumstance, was the first adjudicated.

13     The level of activity of Judge O'Connor's adjudication of the *Gruenberg* action is

14 not meaningful since he was not presented for example, with the more detailed allegations

15 of the *Benson* complaint, in particular those related to the two audits conducted by

16 JPMorgan. While Judge O'Connor may have more experience with the Receivership, this

17 does not justify transfer of this case, especially when the parties and the issues in the

18 California actions are different from both the *Gruenberg* action and the Receivership

19 Action. *Persepolis Enterprise v. UPS, Inc.*, 2007 U.S. Dist. LEXIS 68699 (N.D. Cal.

20 Sept. 7, 2007) is distinguishable in that the two complaints at issue in *Persepolis* had

21 identical parties and issues. Here, the allegations in the *Gruenberg* complaint are

22 meaningfully different from the allegations in the *Benson* complaint.

23     In addition, the *Gruenberg* complaint does not bring causes of action for

24 conspiracy, for aiding and abetting conversion and for violation of the California Unfair

25 Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et. seq.* These three causes

26 of action have distinctly different elements then the claims for aiding and abetting.

27 Regardless, these three claims are different from the *Gruenberg* Action and **not**

28 **addressed** by Judge O'Connor on his order dismissing the *Gruenberg* Action. Thus,

13

1   transfer to the Northern District of Texas would bypass the right of the aggrieved

2   investors to have those claims adjudicated, instead of deemed "dismissed" pursuant to a

3   technicality.

4   Similarly, the California complaints are not identical to the Receivership Action

5   because they allege that JPMorgan is liable to investors in the Millennium Ponzi scheme

6   because of independent actions undertaken by JPMorgan separate and distinct from the

7   actions undertaken by the Millennium Defendants. The Receivership Action has no

8   claims against JPMorgan and thus there is no danger of inconsistent judgments.

9   Moreover, the Receivership Action is not principally responsible for determining liability

10  but is instead focused on preserving and retrieving assets that belong to the Millennium

11  Defendants. The Receivership Action has no interest in whether or not JPMorgan is liable

12  to the investors in the Millennium Ponzi scheme. As such, there is no danger of any

13  inconsistent rulings or decisions between the Receivership Action and the *Benson* and

14  *Lowell* actions. JPMorgan's liability is independent of the preservation of the assets of the

15  Millennium Defendants and neither will impact the other.

16  ### 3.   **JPMorgan's Forum Shopping Does Not Support Transfer**

17  In addition, there are three exceptions to the first-to-file rule: 'bad faith,

18  anticipatory suit, and forum shopping.' *Best W.*, 2008 U.S. Dist. LEXIS 19797 at * 16.

19  Even assuming that the three *Alltrade* factors were present (which Plaintiffs do not

20  concede), courts have chosen not to transfer cases to the venue of the first-filed action if

21  there are issues relating to forum shopping or bad faith. *Alchemist Jet Air, LLC v. Century*

22  *Jets Aviation, LLC*, 2009 U.S. Dist. LEXIS 49472 at * 13 (N.D. Ill. June 12, 2009); *see*

23  *also Schwarz v. National Van Lines, Inc.*, 317 F. Supp. 2d 829, 832-33 (N.D. Ill. 2004).

24  Here, JPMorgan's intent is clear, stating that transfer will deprive these aggrieved

25  investors of no rights since they could seek "relief under Fed. R. Civ. P. 59; and the

26  plaintiff may appeal." (Mot. Tr. at 4). It is evident that this Motion to Transfer is

27  premised on tactical gamesmanship in an effort to place these cases before a court that

28  dismissed a previous less well pleaded complaint, not legitimate considerations. In other

1   words, even though JPMorgan *knows* that the *Benson* and *Lowell* complaints are different

2   and contain allegations showing JPMorgan's actual knowledge, they want to deprive the

3   Plaintiffs here of their day in court, giving them victory at the motion to dismiss stage by

4   technicality and not substance. This gamesmanship is not what the principles of federal

5   comity was meant to protect.

6       **4.    MDL Petition**

7           JPMorgan's citation to the MDL Petition does not support transfer to the Northern

8   District of Texas. The petition itself articulates that the appropriate district for this case is

9   the Northern District of California, not the Northern District of Texas. For example, the

10  *Benson* Action is broader and more detailed then the *Gruenberg* complaint, including

11  specific evidence showing the knowledge possessed by Tamara Miller and Bianca

12  Greeves about the Millennium Ponzi scheme based on their extensive personal

13  involvement with the Millennium bank account, as well as knowledge gained from two

14  audits undertaken by JPMorgan prior to providing Global Services with unprecedented

15  access to sophisticated banking software and hardware. *See* Liang Decl., Exh. A, ¶¶ 52,

16  67-74, 97. In addition, the Northern District of California is the nexus of this case since it

17  was JPMorgan's Napa branch offices that were involved in the Millennium Ponzi scheme.

18  *See* Def. RJN, Exh 13 (MDL Brief) at pp. 1-2. Moreover, the MDL process only

19  consolidates cases for *pre-trial* purposes. All cases transferred pursuant to an MDL

20  Petition are required to be sent back to the original district court for trial. *See* Judicial

21  Panel on Multidistrict Litigation ("JPML") Rule 7.6(b); *Lexecon Inc. v. Milberg Weiss*

22  *Bershad Hynes & Lerach,* 523 U.S. 26, 32-33 (1998). This is a far cry from what

23  JPMorgan seeks here and its request should be rejected.

24  **C.   Public and Private Factors Favor Plaintiffs and Support Denial of
         JPMorgan's Motion to Dismiss**

25

26          JPMorgan, as the moving party, bears a heavy burden to prevail on a motion to

27  transfer under 28 U.S.C. § 1404. In order to prevail on their Motion, Defendants must

28  "make a *strong showing of inconvenience* to warrant upsetting the plaintiff's choice of

15

1  forum." *Decker Coal Co.*, 805 F.2d at 843. "Change of venue, although within the
2  discretion of the district court, should not be freely granted. Courts are in the business of
3  deciding cases, not playing procedural hockey among available districts at the whim of
4  dissatisfied parties." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982). There is a
5  strong presumption in favor of the plaintiff's choice of forum. *Christensen Hatch Farms,*
6  *Inc. v. Peavey Co.*, 505 F. Supp. 903, 911 (D. Minn. 1981). "[U]nless the balance is
7  strongly in favor of the defendant, the ***plaintiff's choice of forum*** should rarely be
8  disturbed. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

9        JPMorgan has not met that burden. In deciding on a motion to transfer venue, the
10  Court must show: (1) the existence of an adequate alternative forum; and (2) that the
11  balance of private and public interest factors ***weigh strongly*** in favor of transfer. *Loya v.*
12  *Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664 (9th Cir. 2009). Private
13  interest factors include "(1) relative ease of access to sources of proof; (2) the availability
14  of compulsory process for attendance of hostile witnesses, and cost of obtaining
15  attendance of willing witnesses; (3) possibility of viewing subject premises; (4) all other
16  factors that render trial of the case expeditious and inexpensive." *Id.* Public interest
17  factors include "(1) administrative difficulties flowing from court congestion; (2)
18  imposition of jury duty on the people of a community that has no relation to the litigation;
19  (3) local interest in having localized controversies decided at home; (4) the interest in
20  having a diversity case tried in a forum familiar with the law that governs the action; (5)
21  the avoidance of unnecessary problems in conflicts of law." *Id./*

22        **1.    Private Interest Factors Favor Litigation in California**

23        All of the private interest factors support denial of JPMorgan's motion to transfer.
24  To the extent that certain documents may be in the Northern District of Texas, JPMorgan
25  has not shown how producing ESI maintained in Texas will cause significant expense or
26  inconvenience. All or most evidence in this case will likely be produced in electronic
27  form. *See Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1362-63 (N.D. Cal. 2007)
28  ("With technological advances in document storage and retrieval, transporting documents

1  does not generally create a burden. . . . This factor . . . is of diminished importance and is

2  neutral toward transfer."). *See also Charter Oak Fire Ins. Co. v. Broan-Nutone, LLC*, 294

3  F. Supp. 2d 218, 221-22 (D. Conn. 2003) (noting that "modern photocopying technology

4  and electronic storage deprive this issue of practical or legal weight"); *Central States, S.E.*

5  *& S.W. Areas Pension Fund v. Salasnek Fisheries, Inc.*, 977 F. Supp. 888, 892 (N.D.

6  Ill.1997) (noting that defendant had not "demonstrated that [it] cannot bring the critical

7  documents to this district").

8          In this case, more meaningful is the fact that the Hoegels and the key JPMorgan

9  witnesses are in Napa, California. Almost all of the individuals with any knowledge

10  regarding the extent of JPMorgan's involvement in the Millennium Ponzi scheme are

11  located in the Northern District of California. As such, the first two private interest

12  factors: (1) relative ease of access to evidence; and (2) availability of compulsory process

13  for attendance of hostile witnesses, and cost of obtaining attendance of willing witnesses

14  favor the Northern District of California. No one with any knowledge regarding

15  JPMorgan's involvement in the Millennium Ponzi scheme resides in the Northern District

16  of Texas. If a trial is held in the Northern District of Texas, everyone of interest will be

17  required to be brought to Wichita Falls, Texas.[3]

18          Moreover, the only physical locations that may be relevant to this case, the two

19  JPMorgan Napa branch offices and the Global Services office are all located in Napa,

20  California. While JPMorgan argues that the Northern District of Texas is a convenient

21  location, this is inaccurate. The Northern District of Texas courthouse where the

22  Receivership Action and the *Gruenberg* action is in Wichita Falls, which is an hour flight

23  from Dallas. Regardless, none of the defendants or plaintiffs identified by JPMorgan

24  reside in Wichita Falls, or even in Dallas. Only the Receiver and the accounting firm

25  hired by the Receiver to review the Millennium Ponzi scheme are in the Northern District

26

27  [3]     Even though Judge Reed O'Connor has a courtroom in Dallas, Texas, pursuant to Special
Order No. 3-259 of the Northern District of Texas, all case filed in the Wichita Falls Division are

28  assigned to Judge O'Connor. Those cases are to be resolved in Wichita Falls.

1    of Texas. Convenience of the Receiver is not a private interest factor recognized by the
2    law. The third private interest factor, therefore, also favors the Northern District of
3    California.

4        While the Northern District of Texas may have jurisdiction over certain of the
5    Millennium Defendants, the Northern District of California would have similar subpoena
6    authority. Regardless, that factor does not strongly favor that district since the key
7    JPMorgan employees (who are not under the jurisdiction of the Northern District of
8    Texas) are in California. JPMorgan's eagerness to have its California witnesses made
9    available only in Texas is not an important factor and telling of the tactical advantage that
10   JPMorgan perceives in the Northern District of Texas. JPMorgan's status as a corporate
11   defendant weighs against it. *See Miracle v. N.Y.P. Holdings, Inc.*, 87 F. Supp. 2d 1060,
12   1073-74 (D. Haw. 2000) (denying motion to transfer under § 1404 because defendants
13   "failed to demonstrate that it would be prohibitively expensive or difficult" for them to
14   travel to litigate the action, and noting that a large corporation can more easily travel for
15   litigation than can private individuals); *Dwyer v. General Motors Corp.*, 853 F. Supp. 690,
16   693 (S.D.N.Y. 1994) (noting that the court may consider the relative means of the parties
17   in deciding a transfer motion).

18       Moreover, the courts have recognized that both parties will always bring partisan
19   witnesses to trial so this court should give little weight to the venue most convenient for
20   partisan witnesses. The more important issue is the district where 1 it will be the easiest to
21   obtain testimony from relevant third party witnesses. "Both sides can be expected to
22   prevail upon their partisan witnesses to appear at trial if their testimony will be favorable.
23   If it is unfavorable, then the only avenue for live trial testimony is the subpoena." *Van
24   Slyke*, 503 F. Supp. 2d at 1353, 1364. There is no evidence that any of the third party
25   witnesses (who may need to be compelled to trial) are located in the Northern District of
26   Texas. On the other hand, at least one of Defendants' service providers, Google, is
27   headquartered in the Northern District of California. *See* Def. RJN, Exh. 7, p. 1, Def.
28   Mem. at 7-8. As such, this factor favors the Northern District of California.

## 2. **Public Interest Factors Favor Litigation in this District**

The public interest factors also favor denial of the motion to transfer. While the Northern District of Texas may have a slightly smaller caseload then the Northern District of California, this is of little significance. On the other hand, there is strong evidence, set forth in the factual background above, showing that the center of gravity of this litigation is the Northern District of California. As such, at least two of the public interest factors: (1) imposition of jury duty on people with a relationship to the litigation; and (2) local interest in having localized controversies decided at home favor the Northern District of California. Moreover, as the Northern District of Texas recognized, because the wrongdoing occurred in California, California law should apply. *See* Def. RJN, Exh. 10, pg. 2. One of the public interest factors is the interest in having a diversity case tried in a forum familiar with the law that governs the action. Here, as California law governs, this public interest factor clearly weighs in favor of the Northern District of California.

## 3. **Plaintiffs are Residents of California**

Plaintiffs' venue choice should be given extra weight because most of the Plaintiffs are residents of the forum district. *Int'l Painters v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 56 (D. D.C. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). *See also Varsic v. United States District Court*, 607 F.2d 245, 252 (9th Cir. 1979) (granting plaintiff's petition for a writ of mandamus, and reasoning that "if Varsic is required to prosecute this action in New York, some three thousand miles from his home, he will suffer the very prejudice which the liberal venue provision of 29 U.S.C. § 1132(e)(2) was designed to avoid"). JPMorgan does not dispute that two of the three Plaintiffs in the *Benson* Action and the sole Plaintiff in the *Lowell* Action are from California but it argues that this is irrelevant because this is a putative class action.

In *Van Slyke*, the defendants made the same argument, and the Court nevertheless deferred to the plaintiffs' choice of forum because (1) no class had yet been certified, so the named plaintiffs were the only plaintiffs, and (2) even if a nationwide class were certified, the named plaintiffs would bear a fiduciary responsibility to lead the class, and

19

1   other class members would never have to appear in the action. In his opinion, Judge

2   Alsup held that, even in a putative class action, Plaintiffs' choice of forum is still entitled

3   to deference. *Id.* Plaintiffs here bear a similar responsibility to absent members of the

4   putative class, and they are the only individual Plaintiffs at this time.

5        Defendants' citation to *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) is of no

6   assistance. In fact, that Ninth Circuit acknowledged that, even in a putative class action,

7   Plaintiffs' choice of forum is still entitled to deference. *Id.* The court's decision in *Lou*

8   focused on the contacts between the parties and the different venues. "In judging the

9   weight to be accorded Lou's choice of forum, consideration must be given to the extent of

10  both Lou's and the Belzbergs' contacts with the forum, including those relating to Lou's

11  cause of action." *Id.* The key in selecting the appropriate forum is whether the operative

12  facts occurred in the forum and if the forum has an interest in the parties or the subject

13  matter. *Id.* In this case, as discussed in detail above, the nexus of the case is in Napa,

14  which is in the Northern District of California. JPMorgan's participation in the

15  Millennium Ponzi scheme all went through their Napa branch offices.

16           **4.   JPMorgan Fails to Meet Its Heavy Burden of Showing the Private and
             Public Interest Factors Favor Transfer**

17

18       The burden on the defendants to prevail on this motion is high. *Decker Coal Co.*,

19  805 F.2d at 843. While JPMorgan may have offered one or two reasons for why the

20  Northern District of Texas is advantageous as compared to the Northern District of

21  California, there are more reasons favoring the Northern District of California.

22  Regardless, JPMorgan has a high burden to overcome and it has failed to do so. As such,

23  denial of its motion to dismiss is warranted.

24

25

26

27

28  / / /

PLAINTIFFS' JOINT OPPOSITION TO MOTION TO TRANSFER; Civil Action Nos. CV 09-5272 & CV 09-5560

1

## V.    CONCLUSION

2    For the foregoing reasons, Plaintiffs respectfully request that the Court deny

3    Defendants' Motion to Transfer Venue.

4

5    Dated: January 27, 2010                          Respectfully submitted,

6                                        By:        /s/ Niall P. McCarthy

7                                             **NIALL P. McCARTHY** (SBN 160175)
                                             nmccarthy@cpmlegal.com
8                                             **ANNE MARIE MURPHY** (SBN 202540)
                                             amurphy@cpmlegal.com
9                                             **ARON K. LIANG** (SBN 228936)
                                             aliang@cpmlegal.com
10                                            **COTCHETT, PITRE & McCARTHY**
                                             840 Malcolm Road, Suite 200
11                                            Burlingame, CA 94010
                                             Tel:    (650) 697-6000
12                                            Fax:    (650) 697-0577

13                                           **STEVEN N. BERK** (*admitted pro hac vice*)
                                             steven@berklawdc.com
14                                            **BERK LAW PLLC**
                                             1225 15th Street, N.W.
15                                            Washington D.C. 20005
                                             Tel:    (202) 232-7550
16                                            Fax:    (202) 232-7556

17                                           **KEITH L. MILLER** (*admitted pro hac vice*)
                                             klm4law@aol.com
18                                            Twenty One School Street
                                             Boston, MA 02108
19                                            Tel:    (617) 523-5803
                                             Fax:    (617) 523-4563
20

21                                           **GILMUR R. MURRAY** (SBN 111856)
                                             gmurray@murrayhowardlaw.com
22                                            **DEREK G. HOWARD** (SBN 118082)
                                             dhoward@murrayhowardlaw.com
23                                            **MURRAY & HOWARD, LLP**
                                             900 Larkspur Landing Circle, Suite 103
24                                            Larkspur, CA 94936
                                             Tel:    (415) 461-3200
25                                            Fax:    (415) 461-3208

26                                           *Counsel for Plaintiffs and
                                             the Putative Class*

27

28