1  Phillip J. Eskenazi (SBN 158976)
   peskenazi@hunton.com
2  Jason J. Kim (SBN 221476)
   kimj@hunton.com
3  **HUNTON & WILLIAMS LLP**
   550 South Hope Street, Suite 2000
4  Los Angeles, California 90071-2627
   Telephone: (213) 532-2000
5   Facsimile: (213) 532-2020

6  Charles A. Gall *(Admitted Pro Hac Vice)*
   cgall@hunton.com
7  James W. Bowen *(Admitted Pro Hac Vice)*
   jbowen@hunton.com
8  **HUNTON & WILLIAMS LLP**
   1445 Ross Avenue, Suite 3700
9  Dallas, Texas 75202
   Telephone: (214) 979-3000
10 Facsimile: (214) 880-0011

11 Attorneys for Defendant
   JPMORGAN CHASE BANK, N.A

12

13          **UNITED STATES DISTRICT COURT**

14          **NORTHERN DISTRICT OF CALIFORNIA**

15 KIMBERLY BENSON, et al.,          Civil Action No. CV 09-5272 EMC
16                                    Civil Action No. CV 09-5560 EMC
                 Plaintiff,
17                                    **DEFENDANT JPMORGAN CHASE
         v.                           BANK, N.A.'S:**
18
   JPMORGAN CHASE BANK, etc.          **(1)   NOTICE OF MOTION AND
19                                            MOTION TO DISMISS FOR
                 Defendant.                   LACK OF SUBJECT MATTER
20                                            JURISDICTION PURSUANT
                                              TO FED.R.CIV.P. 12(b)(1);
21 _____          AND

22 JOHN ALEXANDER LOWELL, etc.        **(2)   MEMORANDUM OF POINTS
                                              AND AUTHORITIES IN
23               Plaintiff,                   SUPPORT THEREOF**

24       v.                           DATE:   June 23, 2010
                                      TIME:   10:30 a.m.
25 JPMORGAN CHASE BANK, etc.          CTRM.:  Courtroom C

26               Defendant.           *[Declaration of James W. Bowen, Request
                                      for Judicial Notice and [Proposed] Order
27                                    Filed Concurrently Herewith]*

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 10:30 a.m. on June 23, 2010 or as soon thereafter as the matter may be heard in Courtroom C of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant JPMorgan Chase Bank, N.A. will, and hereby does, move the Court for an order dismissing the Complaints of Plaintiffs Kimberly Benson, Karimdad Baloch, Neerja Jain Gursahaney, and John Alexander Lowell, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, because the Court lacks subject matter jurisdiction over Plaintiffs' claims.

More specifically, Plaintiffs' claims relate to alleged acts and omissions of Washington Mutual Bank before it failed and was taken over by the Federal Deposit Insurance Corporation ("FDIC"), relate to the acts and omissions of the FDIC, and seek payment from the assets of the failed bank.  Pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989, specifically 12 U.S.C. § 1821(d)(13)(D), the Court lacks subject matter jurisdiction over Plaintiffs' claims because they have failed to exhaust their administrative remedies.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice, and the Declaration of James

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION PURSUANT TO FED.R.CIV.P. 12(b)(1)

1    W. Bowen filed concurrently herewith, all pleadings and papers on file, and upon such

2    oral argument as may be made at the hearing on this Motion.

3

4    Dated:  May 18, 2010                    Respectfully submitted,

5

6                                            By: /s/ Phillip J. Eskenazi

7                                            Phillip J. Eskenazi (SBN 158976)
                                             peskenazi@hunton.com
8                                            Jason J. Kim (SBN 221476)
                                             kimj@hunton.com
9                                            **HUNTON & WILLIAMS LLP**
                                             550 South Hope Street, Suite 2000
10                                           Los Angeles, California 90071-2627
                                             Telephone:   (213) 532-2000
11                                           Facsimile:   (213) 532-2020

12                                           and

13                                           Charles A. Gall *(Admitted Pro Hac Vice)*
                                             cgall@hunton.com
14                                           James W. Bowen *(Admitted Pro Hac Vice)*
                                             jbowen@hunton.com
15                                           **HUNTON & WILLIAMS LLP**
                                             1445 Ross Avenue, Suite 3700
16                                           Dallas, Texas  75202
                                             Telephone:   (214) 979-3000
17                                           Facsimile:   (214) 880-0011

18                                           *Attorneys for Defendant*
19                                           *JPMORGAN CHASE BANK, N.A.*

20

21

22

23

24

25

26

27

28

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION PURSUANT TO FED.R.CIV.P. 12(b)(1)

# TABLE OF CONTENTS

Page

I.   INTRODUCTION AND STATEMENT OF ISSUES ........................................ 1

II.  STATEMENT OF FACTS ................................................................................ 3

III. ARGUMENT AND AUTHORITIES ............................................................... 5

    A.   Plaintiffs' Failure To Satisfy FIRREA Requires Dismissal For Lack Of Subject Matter Jurisdiction. .......................................................... 5

        1.   Congress Mandates That Claims Relating To Any Act Or Omission Of WaMu Bank Or Its Assets Be Brought Through The FIRREA Process, And The Failure To Do So Timely Bars Those Claims. ............................................................. 5

    B.   All Of Plaintiffs' Claims Were Required To Be Submitted In FIRREA's Exclusive Claims Process. ....................................................... 7

        1.   Plaintiffs Do Not Plead And Cannot Demonstrate That They Complied With The FIRREA Administrative Review Procedure. ........................................................................................ 12

    C.   Plaintiffs Cannot Plead Around FIRREA By Naming Only JPMorgan Chase As A Defendant And Alleging That It Was Washington Mutual, Inc.'s Alleged "Successor In Interest." ................. 12

IV.  CONCLUSION ............................................................................................... 16

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED.R.CIV.P. 12(b)(1)

1

## TABLE OF AUTHORITIES

2

**Cases** Page

3

*Abbott Building Corp. v. United States*,
951 F.2d 191 (9th Cir. 1991) ............................................................................ 7

4

*America First Federal , Inc. v. Lake Forest Park, Inc.*,
5    198 F.3d 1259 (11th Cir. 1999) .................................................................. 8, 13

6 *American National Insurance Co. v. JPMorgan Chase & Co., et al.*,
No. 1:09-cv-01743-RMC, 2010 WL 1444533 (D.D.C. Apr. 13, 2010) ........ 14, 15

7

*Brandow v. FDIC*,
8    2008 WL 5378348 (N.D. Ohio Dec. 22, 2008) .................................................. 8

9 *DiSibio v. Mission National Bank*,
127 Fed. Appx. 950, 2005 WL 824106 (9th Cir. 2005) ................................... 13

10

*FDIC v. Shain, Schaffer & Rafanello*,
11    944 F.2d 129 (3d Cir. 1991) .............................................................................. 5

12 *In re Ford Motor Co.*,
264 F.3d 952 (9th Cir. 2001) .......................................................................... 11

13

*Freeman v. FDIC*,
14    56 F.3d 1394 (D.C. Cir. 1995) ........................................................................... 6

15 *Henderson v. Bank of New England*,
986 F.2d 319 (9th Cir. 1993) ............................................................................ 7

16

*Intercontinental Travel Marketing, Inc. v. FDIC*,
17    45 F.3d 1278 (9th Cir. 1994) ............................................................................ 7

18 *Kokkonen v. Guardian Life Insurance Co.*,
511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) ............................... 11

19

*McCarthy v. FDIC*,
20    348 F.3d 1075 (9th Cir. 2004) ........................................................................... 7

21 *National Union Fire Insurance Co. of Pittsburgh, Pa. v. City Sav.*,
*F.S.B.*, 28 F.3d 376 (3rd Cir. 1994) .................................................................... 5

22

*Savage v. Glendale Union High School District Number 205*,
23    343 F.3d 1036 (9th Cir. 2003) ......................................................................... 12

24 *St. Clair v. City of Chico*,
880 F.2d 199 (9th Cir. 1989) .......................................................................... 12

25

*Tosco Corp. v. Communities For a Better Environment*,
26    236 F.3d 495 (9th Cir. 2001) .......................................................................... 12

27

28

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Village of Oakwood v. State Bank & Trust Co.*,
   519 F. Supp. 2d 730 (N.D. Ohio 2007) .................................................. 13, 14, 15

*In re Washington Mutual, Inc. ERISA Litig.*,
   2009 U.S. Dist. LEXIS 109961, at *49–51 (W.D. Wa. Oct. 5, 2009) ............... 11

**Statutes**

12 U.S.C. § 1821(d)(13)(D)............................................................................passim

**Other**

H.R. REP. NO. 101-54(I) (1989), reprinted in 1989 U.S.C.C.A.N. 86.................... 5

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION PURSUANT TO FED.R.CIV.P. 12(b)(1)

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      Defendant JPMorgan Chase Bank N.A. ("JPMorgan Chase") hereby moves to

3  dismiss the Plaintiffs' Complaints pursuant to Rule 12(b)(1) of the Federal Rules of

4  Civil Procedure as follows:

5  **I.      INTRODUCTION AND STATEMENT OF ISSUES**

6      These lawsuits arise from alleged misconduct at Washington Mutual Bank

7  ("WaMu Bank").  Purportedly, UT of S, LLC and related entities and individuals,

8  including William Wise and Jacqueline Hoegel (collectively, "UTS"), implemented a

9  Ponzi scheme.  Plaintiffs further allege that UTS "enlisted WAMU's services," and

10 that those services provided "both legitimacy and critical banking services . . . that

11 allowed [the Ponzi scheme] to thrive and continue defrauding innocent investors for

12 years."   At base, Plaintiffs allege that "the center of gravity of the scheme was

13 WaMu's Napa Branches," and through activities in those offices "WAMU conspired

14 with numerous individuals and entities in furtherance of the wrongful acts alleged in

15 the complaint[s]."  This purported "WAMU conspiracy" allegedly paved the way for

16 UTS to induce Plaintiffs to invest in bogus certificates of deposit issued by

17 Millennium Bank.  Plaintiffs also allege that WaMu Bank profited and was unjustly

18 enriched through its role in the Ponzi scheme.

19     All of the specific allegations in the Complaints pre-date September 25, 2008,

20 the day on which WaMu Bank became the single largest bank to fail in United States

21 history.  On that day, WaMu Bank and Washington Mutual, Inc., then the parent of

22 WaMu Bank, were separated.  The Office of Thrift Supervision ("OTS") appointed

23 the Federal Deposit Insurance Corporation ("FDIC") as receiver for the bank.  Shortly

24 thereafter, Washington Mutual Inc. declared bankruptcy.

25     The FDIC, in accordance with its powers as receiver, proceeded with a

26 resolution strategy for WaMu Bank.  The FDIC sold substantially all of WaMu

27 Bank's assets and certain of its liabilities to JPMorgan Chase.  The FDIC also

28 instituted the Congressionally mandated claims process, in accordance with the

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION PURSUANT TO FED.R.CIV.P. 12(b)(1)

1    Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No.

2    101-73, 103 Stat. 183 (1989) ("FIRREA").   FIRREA offers the *exclusive* process for

3    resolution of several categories of claims relating to a failed bank, including:

4    (a) claims relating to the acts and omissions of WaMu Bank (such as its pre-seizure

5    alleged misconduct dating back to 2004 that is described in the Complaints); (b)

6    claims relating to the acts and omissions of the FDIC (such as the FDIC's sale of the

7    assets and certain liabilities to JPMorgan Chase, which Plaintiffs misinterpret in order

8    to name JPMorgan Chase as the Defendant in these actions); and (c) claims seeking

9    payment from the assets of WaMu Bank (such as the claims brought by Plaintiffs

10   seeking to recoup the profits that WaMu Bank obtained due to its dealings with UTS).

11   12 U.S.C. § 1821(d)(13)(D).   Plaintiffs cannot proceed in any court on such claims

12   unless they have complied with FIRREA's requirements.

13        The issue on this motion is therefore purely jurisdictional:  whether Plaintiffs

14   can proceed on their claims notwithstanding the jurisdictional bar Congress imposed

15   in FIRREA.   FIRREA expressly prohibits judicial review outside of the receivership

16   claims process of: (1) "any claim relating to any act or omission of the [failed bank]"

17   and (2) any "action seeking a determination of rights with respect to [] the assets of

18   any depository institution for which the Corporation has been appointed receiver."  12

19   U.S.C. § 1821(d)(13)(D)(i)–(ii).   Plaintiffs have failed to pursue their claims through

20   the mandatory receivership claims process and, consequently, this Court lacks

21   jurisdiction to review those claims.

22        In an effort to avoid this result, Plaintiffs have pleaded their claims against

23   JPMorgan Chase as the acquirer of certain assets from the FDIC.   Plaintiffs' claims

24   against JPMorgan Chase depend on WaMu Bank's pre-failure acts and on Plaintiffs'

25   mistaken interpretation of the Purchase and Assumption Agreement executed by

26   JPMorgan Chase and FDIC (the "PAA") that JPMorgan Chase is the successor in

27   interest to WaMu Bank and assumed the liabilities for Plaintiffs' allegations.   In any

28   event, Plaintiffs seek through their claims to recover assets of WaMu Bank.   In this

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION PURSUANT TO FED.R.CIV.P. 12(b)(1)

regard, their complaint is a thinly veiled effort to evade FIRREA and a strategy that has been rejected not only by the Ninth Circuit, but also by the Sixth and Eleventh Circuits, and most recently the District Court of the District of Columbia.  Because Plaintiffs have failed to comply with the exclusive FIRREA claims processes, Plaintiffs' claims cannot be asserted in any court for lack of subject matter jurisdiction.

## II.    STATEMENT OF FACTS

1.    WaMu Bank's supposed involvement in the Millennium Ponzi scheme allegedly spanned more than four years prior to the FDIC receivership.  Starting in July 2004, Plaintiffs allege that WaMu Bank was instrumental in launching the scheme by permitting Wise to open the fraudulent accounts without any documentation or registration.  Lowell Comp. ¶¶ 28–29; *see also* Benson Comp. ¶¶ 46 and 48.  Plaintiffs further allege that WaMu Bank "knew that no money was being spent on investments."  *Id.* According to Plaintiffs, WaMu Bank purportedly "participate[d] fully in the fraud, including [by] providing both legitimacy and critical banking services to Wise's enterprise that allowed it to thrive and continue defrauding innocent investors for years."  Lowell Comp. ¶¶ 1, 4; Benson Comp. ¶¶ 1, 5.

2.    In early 2008, Plaintiffs allege that WaMu Bank went further and "recommended and installed a remote banking platform at [UTS' offices] . . . to facilitate the conduct of the fraudulent activity."  Lowell Comp. ¶ 3.  According to Plaintiffs, that was intended to "streamline the process by which the Nevada LLC's could launder money through WaMu while reducing the required oversight of those Nevada LLC's." Benson Comp. ¶ 56.   In WaMu Bank's Napa branch offices, allegedly, "WaMu's managers and employees . . . approved the deposits of hundreds of millions of dollars of innocent investors' monies."  Benson Comp. ¶ 49; *see also* Lowell Comp. ¶¶ 2-3.  All in all, Plaintiffs allege that "the center of gravity of the scheme was WaMu's Napa Branches."  Benson Comp. § C.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  3.     According to the *Benson* Complaint: (a) Plaintiff Neerja Gursahaney

2  purchased a Millennium Bank certificate of deposit in the amount of $4 million in

3  August 2008 (Benson Comp. ¶ 17); (b) Plaintiff Karimdad Baloch purchased a

4  Millennium Bank certificate of deposit in the amount of $119,750 in February 2008

5  (*id.* ¶ 18); and (c) Plaintiff Kimberly Benson purchased Millennium Bank certificates

6  of deposit totaling $144,000 on May 23, 2006, May 15, 2007, and May 14, 2008 (*id.*

7  ¶ 19).

8  4.     Plaintiff Lowell does not allege that he purchased certificates of deposit,

9  much less when and in what amount.  A review of the activity in UTS' account at

10  WaMu Bank, however, reveals deposits of two checks totaling $36,500 executed by a

11  John Lowell made payable to "UT of S/MB" and "UT of S" dated July 23, 2007 and

12  December 21, 2007.  *See* exhibits "1" and "2" to the Bowen Declaration.

13  5.     On September 25, 2008, the OTS seized WaMu Bank and appointed

14  FDIC as its receiver pursuant to 12 U.S.C. § 1821(c).  Lowell Comp. ¶ 6; Benson

15  Comp. ¶ 7.[1]  On that same day, the FDIC, as receiver of WaMu Bank, sold to

16  JPMorgan Chase certain of WaMu Bank's assets and liabilities pursuant to the PAA.

17  Request for Judicial Notice, Exhibit "1."

18  6.     And, to be clear, the OTS did not seize Washington Mutual, Inc., WaMu

19  Bank's parent, and the FDIC did not sell to JPMorgan Chase any assets or liabilities

20  of Washington Mutual, Inc.  Although Plaintiffs allege that JPMorgan Chase is

21  "successor in interest" to Washington Mutual, Inc. and assumed its liabilities (Lowell

22  Comp. ¶ 12; Benson Comp. ¶ 21), that allegation is demonstrably false.  Pursuant to

23  the PAA, JPMorgan Chase acquired nothing from Washington Mutual, Inc., and it

24  certainly is not Washington Mutual, Inc.'s successor.  Washington Mutual, Inc.

25  remains in existence as a debtor that has filed for bankruptcy protection in the United

26  States Bankruptcy Court for the District of Delaware.  *See In re Washington Mutual,*

27  *Inc., et al.*, Case No. 08-12229 (MFW) (Bankr. D. Del.).

28
---
[1]      The Complaints misstate that OTS seized WaMu Bank on September 23, 2008.

4

7.   On November 5, 2009, Plaintiffs in the *Benson* case filed their complaint alleging that WaMu Bank knowingly and substantially assisted UTS and others in defrauding Plaintiffs and in breaching UTS' duties to Plaintiffs.  *See, e.g.,* Benson Comp. ¶ 1 ("For over four years, WAMU actively and knowingly participated in the fraudulent activities of a Caribbean Island financial institution known as Millennium Bank . . . .").  On November 23, 2009, Plaintiff John Alexander Lowell filed an almost identical complaint.  *See*, *e.g.*, Lowell Comp. ¶ 1 ("This case involves the unlawful conduct of what once was the largest savings and loan association in the nation, Washington Mutual, Inc., which failed in September, 2008 and was acquired by [JPMorgan Chase].").

8.   Although the claims relate to the acts of WaMu Bank and the FDIC-Receiver and though the Plaintiffs seek assets of WaMu Bank, Plaintiffs do not allege that they complied with FIRREA's administrative processes before filing their Complaints.

## III.   ARGUMENT AND AUTHORITIES

### A.   Plaintiffs' Failure To Satisfy FIRREA Requires Dismissal For Lack Of Subject Matter Jurisdiction.

#### 1.   Congress Mandates That Claims Relating To Any Act Or Omission Of Wamu Bank Or Its Assets Be Brought Through The FIRREA Process, And The Failure To Do So Timely Bars Those Claims.

In 1989, in response to the pending savings and loan crisis, Congress enacted FIRREA.  See H.R. REP. NO. 101-54(I) (1989), reprinted in 1989 U.S.C.C.A.N. 86 (the "Congressional Report").  "FIRREA was in fact passed to give the [FDIC acting as] receiver extraordinary powers" to deal with the crisis posed by the failure after failure of savings and loan institutions nationwide.  *National Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 388 (3d Cir. 1994); *see also FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 131 (3d Cir. 1991) (FIRREA enacted to create "broad revisions in federal banking law to enhance certain powers of the FDIC and to eliminate impediments to the efficient resolution of failed financial

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

institutions."). FIRREA was designed to enhance the powers of the FDIC and make resolution of failed financial institutions more efficient and less costly. *See* Congressional Report at 86. To that end, FIRREA sets out clearly the exclusive mechanism for adjudicating claims relating to acts of a failed institution or the FDIC and for payments from the assets of the failed institution.

Congress mandated that (i) any "action seeking a determination of rights with respect to[] the assets of any depository institution for which the Corporation has been appointed receiver" and (ii) any "claim relating to any act or omission of [a failed bank]" (12 U.S.C. § 1821(d)(13)(D)(i)–(ii)) must be submitted through the administrative claims process described in 12 U.S.C. § 1821(d). If a claimant submits a timely claim, the FDIC has 180 days to determine whether to allow or disallow the claim. 12 U.S.C. § 1821(d)(5)(A)(i). In the event of a disallowance, the claimant may opt to have that decision administratively reviewed by the FDIC or it may litigate those disallowed claims—and only those disallowed claims—in either the U.S. District Court for the District of Columbia or the district in which the failed bank's principal place of business is located. *See* 12 U.S.C. § 1821(d)(6)(A).[2]

If, however, a claimant fails to follow these procedures, "the claim shall be deemed to be disallowed . . . , such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B)(ii). As a result, in accordance with FIRREA's claims process, all claims relating to the acts or omissions of WaMu Bank prior to receivership or seeking payment from the assets of WaMu Bank must first be filed with the FDIC. *See* 12 U.S.C. § 1821(d)(3)–(11).

Pursuant to this statutory regime, "Section 1821(d)(13)(D) . . . acts as a jurisdictional bar to claims or actions by parties who have not exhausted their § 1821(d) administrative remedies." *Freeman v. FDIC*, 56 F.3d 1394, 1401 (D.C. Cir.

---

[2]      WaMu Bank's principal place of business was in Washington.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1995) ("Our sister circuits have broadly applied the § 1821(d) jurisdictional bar to all manner of 'claims' and 'actions seeking a determination of right with respect to' the assets of failed banks, whether those claims and actions are by debtors, creditors, or others.") (citing decisions from the First, Second, Fifth and Ninth Circuits).  In fact, the Ninth Circuit repeatedly has recognized that the claims procedure in FIRREA is mandatory, and that, pursuant to 12 U.S.C. § 1821(d)(13)(D), district courts lack jurisdiction to adjudicate claims where the plaintiffs failed to exhaust their administrative remedies.  *McCarthy v. FDIC*, 348 F.3d 1075, 1081 (9th Cir. 2004) (Claimants "must exhaust administrative remedies before seeking judicial review."); *Intercontinental Travel Marketing, Inc. v. FDIC*, 45 F.3d 1278, 1283 (9th Cir. 1994) ("Because [the Plaintiff] failed to properly exhaust the statutorily mandated exhaustion requirements of § 1821(d), no jurisdiction exists over its action."); *Henderson v. Bank of New England*, 986 F.2d 319, 321 (9th Cir. 1993) ("A claimant must therefore first complete [FIRREA's] claims process before seeking judicial review."); *Abbott Bldg. Corp. v. United States*, 951 F.2d 191, 194, n.3 (9th Cir. 1991) ("FIRREA did create a claims procedure, and required its exhaustion.").  Thus, where a potential claimant in WaMu Bank's receivership fails to comply with FIRREA's mandatory process by filing a timely proof of claim with the receivership and then seeking timely review of any FDIC disallowance by the appropriate court, no court has subject matter jurisdiction to hear such claims.  As demonstrated below, Plaintiffs were required to submit each of their claims in FIRREA's claims process, and, due to Plaintiffs' failure to do so, this Court lacks subject matter jurisdiction to hear Plaintiffs' claims.

### B.   All Of Plaintiffs' Claims Were Required To Be Submitted In FIRREA's Exclusive Claims Process.

The allegations in both the *Benson* and *Lowell* Complaints relate to WaMu Bank's alleged involvement in the alleged Ponzi scheme, and they thus relate to acts and omissions of the failed institution. 12 U.S.C. § 1821(d)(13)(D)(ii).  Plaintiffs also

7

seek to recoup WaMu Bank's profits allegedly gained from its dealings with the perpetrators of the Ponzi scheme (Lowell Comp. ¶ 89.3; Benson Comp. ¶ 127.3) and thus seek "payment from, or . . . a determination of rights with respect to, the assets of" WaMu Bank. 12 U.S.C. § 1821(d)(13)(D)(i). Finally, Plaintiffs erroneously assert that JPMorgan Chase is the successor to Washington Mutual Inc. and seek an interpretation not only of the PAA entered into by the FDIC, but also a judicial ruling regarding the legal effect of the FDIC's actions as receiver. Thus, Plaintiffs' claims "relate to any act or omission of [the FDIC] as receiver for [WaMu Bank]." As a result, FIRREA governs Plaintiffs' claims, and their failure to satisfy FIRREA's exhaustion requirements before filing in the appropriate court requires dismissal for lack of subject matter jurisdiction.

*First*, no question exists that Plaintiffs' claims relate to alleged acts and omissions of WaMu Bank before its failure and seizure by the FDIC. Plaintiffs invested in the allegedly bogus Millennium Bank certificates of deposit *prior to* WaMu Bank's failure. *See* Statement of Facts, *supra*, ¶¶ 2 and 3. Thus, the fraud that UTS allegedly perpetrated on Plaintiffs occurred, if at all, before WaMu Bank failed. If WaMu Bank knowingly assisted UTS with that fraud, then its assistance necessarily would have occurred prior to WaMu Bank's failure.[3]

Neither Complaint even attempts to hide the reality that Plaintiffs seek to recover from JPMorgan Chase for WaMu Bank's acts and omissions in the years preceding its failure. *See generally* Lowell Comp. ¶ 1 ("This case involves the unlawful conduct of what was once the largest savings and loan association in the nation, which failed in September, 2008 and was acquired by JPMorgan Chase."); Benson Comp. ¶ 1 ("For over four years, WAMU actively and knowingly participated

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

---

[3]    Although Plaintiffs bring their claims as a putative class action, that does not save their claims from the jurisdictional bar. First, before Plaintiffs themselves can maintain a class action, the Court must have jurisdiction over their particular claims. Second, FIRREA does not permit class claims. *Brandow v. FDIC*, 2008 WL 5378348, at *2 (N.D. Ohio Dec. 22, 2008). Each member of the putative class must submit his or her claim individually to the FDIC. *Id.*

in the fraudulent activities . . . ."); *see also* Plaintiffs' Opposition to Motion to Dismiss Benson Complaint (D.I. 29) at 1 n.1 ("The financial institution that directly carried out the underlying acts set forth in this Complaint was Washington Mutual [].  In 2008, WaMu was taken over by the FDIC and sold (assets and liabilitiest) [sic] to JPMorgan Chase, NA.").

By way of example, Plaintiffs specifically allege:

- UTS opened accounts at WaMu Bank in "July of 2004," and WaMu Bank proved to be "the ideal banking partner for Wise's fraudulent scheme" in part because "WaMu permitted Wise to open these accounts without any documentation to show a legitimate business purpose, or any registration to carry out the activities for which the LLC's had been formed."  (Lowell Comp. ¶¶ 28–29; Benson Comp. ¶¶ 46, 48);

- "[W]ithin weeks . . . the Hoegels were relying heavily on the services of WAMU branch offices in Napa, California . . . [including] in effectuating both the deposits of large bulk checks and the subsequent suspicious transfers of millions of dollars to offshore banking accounts."  (Lowell Comp. ¶¶ 28, 34; Benson Comp. ¶¶ 46 52);

- The OTS had imposed on WaMu Bank a Consent Decree on October 17, 2007 "for its blatant failure to comply with federal Anti-Money Laundering statutes . . . ."  (Lowell Comp. ¶ 5; *see also* Benson Comp. ¶¶ 6, 37 and Ex. A);

- By "early 2008," WaMu Bank had "recommended and installed a remote banking platform at [UTS' offices] . . . to facilitate the conduct of the fraudulent activity."  (Lowell Comp. ¶ 3; *see also* Benson Comp. ¶¶ 5, 45, 56);

- Before installing the remote banking platform, "WaMu was required to and did conduct separate audits of the Wise operation" and therefore "knew the precise nature of the business being conducted by Wise and the Hoegels, but nonetheless permitted" its installation, which "made it easier . . . to launder money out of the country and to evade detection

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

9

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

from regulators." (Lowell Comp. ¶¶ 4, 47-49; *see also* Benson Comp. ¶ 5);

- WaMu Bank's "involvement in the Millennium fraud was active and pervasive" and included two separate audits beginning in early 2008 which "provided it with uncontroverted evidence that Wise and the Hoegels were engaging in an illegal enterprise." (Benson Comp. ¶ 5; *see also* Lowell Comp. ¶ 4); and

- Nonetheless, "WaMu's Napa branch handled and accepted these bulk checks totaling in the millions of dollars, effectuated wire transfers to known offshore banking havens and otherwise provided substantial assistance to Wise and the Hoegels for over four years." (Lowell Comp. ¶ 35; *see also* Benson Comp. ¶ 4).

In short, Plaintiffs' Complaints seek to recover damages from JPMorgan Chase because "WaMu's branch offices in Napa, California were the center of gravity of WaMu's involvement in the Millennium Ponzi scheme" whereby "WaMu's managers and employees . . . approved the deposits of hundreds of millions of dollars of innocent investors' monies and allowed Wise and his associates to misappropriate that money." Benson Comp. ¶ 49; *see also* Lowell Comp. ¶¶ 2-3. Therefore, according to Plaintiffs, WaMu Bank "participate[d] fully in the fraud, including providing both legitimacy and critical banking services to Wise's enterprise that allowed it to thrive and continue defrauding innocent investors for years." Benson Comp. ¶ 5; *see also* Lowell Comp. ¶ 4. Plaintiffs' Complaints thus present "claim[s] relating to any act or omission of [WaMu Bank]," over which the Court lacks jurisdiction. 12 U.S.C. § 1821(d)(13)(D)(ii).

*Second*, Plaintiffs claims are independently barred by section (d)(13)(D)(i) of FIRREA because Plaintiffs plainly seek recovery from the assets of WaMu Bank. More specifically, both Complaints seek "restitution, including without limitation, disgorgement of all profits, and unjust enrichment obtained by Defendant as a result of its unlawful, unfair and fraudulent business practices and conduct alleged herein."

10

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Lowell Comp. ¶ 89.3; Benson Comp. ¶ 127.3.  To the extent that the Complaints seek to recover WaMu Bank's profits from its dealings with the operators of the Ponzi scheme, the Complaints seek "payment from . . . or a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver" and are therefore barred by 12 U.S.C. § 1821(d)(13)(D)(i).

*Third*, the Complaints are governed by FIRREA's exclusive claims process because the only supposed nexus between WaMu Bank's alleged misconduct and JPMorgan Chase's purported liability is predicated on Plaintiffs' erroneous interpretation of the PAA.  As an initial matter, a simple reading of the PAA shows that JPMorgan Chase is not the "successor in interest" to Washington Mutual, Inc. in any respect.  *See* Lowell Comp. ¶ 12; Benson Comp. ¶ 21.[4]  In any event, any court that *had* jurisdiction to resolve such claims necessarily would need to consider whether, by virtue of the PAA, the FDIC as WaMu Bank's receiver made JPMorgan Chase a successor in interest to Washington Mutual, Inc.  *See* Benson Comp. ¶ 7; Lowell Comp. ¶¶ 6, 12.  Likewise, the court also would have to consider whether the FDIC's transfer of assets and certain liabilities to JPMorgan Chase pursuant to the PAA transferred the liabilities for the misconduct by WaMu Bank that is alleged in the Complaints.  *See* Lowell Comp. ¶ 12; Benson Comp. ¶ 21. Accordingly, the Complaints, by necessity, require resolution of disputes regarding the FDIC's decision to enter into the PAA and drafting of its terms, including how the FDIC used the PAA to allocate WaMu Bank's liabilities between it and JPMorgan Chase.  Plaintiffs' claims therefore "relat[e] to any act or omission of [the FDIC] as receiver" for WaMu Bank (12 U.S.C. § 1821(d)(13)(D)(ii)), and are barred by FIRREA.

---

[4]      Indeed, the United States District Court for the Western District of Washington concluded last year that the FDIC did not have authority to assign Washington Mutual, Inc.'s liabilities to JPMorgan Chase through the PAA.  *In re Washington Mutual, Inc. ERISA Litig.*, MDL No. 2:08-md-1919 MJP, ERISA Lead Case No. No. C07-1874 MJP, 2009 U.S. Dist. LEXIS 109961, at *49–51 (W.D. Wa. Oct. 5, 2009).

11

### 1. Plaintiffs Do Not Plead And Cannot Demonstrate That They Complied With The FIRREA Administrative Review Procedure.

Plaintiffs bear the burden to both plead and prove the existence of subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L. Ed 2d 391 (1994); *In re Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001). At the pleading stage, Plaintiffs are required to show "affirmatively and distinctly the existence of whatever is essential to federal jurisdiction, and if [they do] not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect can be corrected by an amendment." *Tosco Corp. v. Communities For a Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001).

Rule 12(b)(1) attacks on subject matter jurisdiction may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the Court is permitted to look at facts beyond the Complaint. *Savage v. Glendale Union High School Dist. No. 205*, 343 F.3d 1036, 1040 n. 2 (9th Cir. 2003). Here, not only have Plaintiffs not pleaded facts showing that they satisfied FIRREA's exhaustion requirement sufficient to establish subject matter jurisdiction, but also the facts now before the Court establish the jurisdictional deficiency of Plaintiffs' Complaints. Accordingly, Plaintiffs "must furnish affidavits or other evidence necessary" to prove that they have complied with FIRREA's administrative claims process. *Id*; *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). Plaintiffs cannot make that showing. JPMorgan Chase therefore respectfully submits that the Court lacks jurisdiction over Plaintiffs' claims.

### C. Plaintiffs Cannot Plead Around FIRREA By Naming Only JPMorgan Chase As A Defendant And Alleging That It Was Washington Mutual, Inc.'S Alleged "Successor In Interest."

In possible recognition that their claims are governed and barred by FIRREA, Plaintiffs assert that JPMorgan Chase is liable to them as a "successor in interest" to Washington Mutual, Inc. Courts consistently have seen through and rejected similar

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

attempts to avoid FIRREA's claims process by Plaintiffs who attack the third party that purchased assets from the receiver.  The plain language of FIRREA broadly applies to (a) "*any claim relating* to *any act*" of the failed bank or the FDIC as receiver for such institution," *even* if the FDIC and failed bank are not named as defendants; and (b) any "action seeking a determination of rights with respect to[] the assets of any depository institution for which the Corporation has been appointed receiver," even if the assets are no longer in the possession of the FDIC.  12 U.S.C. § 1821(d)(13)(D) (emphasis added).   Accordingly, the Sixth, Ninth, and Eleventh Circuits and recently the District Court of the District of Columbia have held that the plain language of Section 1821(d)(13)(D) bars claims "relating" to the acts of the receiver or seeking the assets of the failed bank, even when those claims are asserted against the third-party purchaser of failed-bank assets from the receiver.  *See Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (holding that claims against purchaser of failed-bank assets from the FDIC were barred by 12 U.S.C. § 1821(d)(13)(D)(ii) as "directly related to acts or omissions of the FDIC as the receiver of [the failed bank]"); *DiSibio v. Mission Nat'l Bank*, 127 Fed. Appx. 950, 951, 2005 WL 824106 (9th Cir. 2005) (unpublished) (holding that "[t]he district court properly dismissed [plaintiffs'] claims against [the purchasing bank]" that were based on the failed bank's actions "because they failed to exhaust their administrative remedies before the [receiver]"); *Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 n.3 (11th Cir. 1999) ("AFF, having purchased the note from the RTC, stands in the shoes of the RTC and acquires its protected status under FIRREA. . . .  Thus, if Lake Forest is barred [by Section 1821(d)] from asserting this claim against the RTC, it is similarly barred from asserting it against AFF.").

The decision in *Village of Oakwood v. State Bank & Trust Co.*, 519 F. Supp. 2d 730 (N.D. Ohio 2007), *aff'd*, 539 F.3d 373 (6th Cir. 2008), is directly on point.  In that case, the plaintiffs brought claims against a bank that acquired the assets of a failed bank from the FDIC under a Purchase and Assumption Agreement.  The plaintiffs

alleged that the assuming bank was the "successor" to the failed bank, and that, in addition, it had aided and abetted the FDIC in its alleged breach of fiduciary duty to the plaintiffs. *Id.* at 732–33. The FDIC intervened, and both FDIC and the assuming bank challenged the court's jurisdiction because the plaintiffs had failed to exhaust their administrative remedies. In response, the plaintiffs argued that FIRREA did not apply because it had brought claims only against the assuming bank, not FDIC. *Id.* at 734–35.

After a thorough examination of FIRREA, including the language of 12 U.S.C. § 1821(d)(13)(D), the court rejected the plaintiffs' argument:

> The alternative—to permit claimants to avoid the provisions of d(6) and d(13) by bringing claims against the assuming bank—would encourage the very litigation FIRREA aimed to avoid . . . . The resulting regime would "thwart FIRREA's purpose and permit creditors to evade the comprehensive administrative claims procedures envisioned by the statute . . . ."
>
> It would also create an obstacle to the FDIC's quick and successful resolution of failed banks; an assuming bank would rarely be inclined to enter into a Purchase and Assumption Agreement with the FDIC knowing that it could be taking on unidentified liabilities of undefined dimensions that could arise at some uncertain date in the future.

*Id.* at 738.

Similarly, in *American National Insurance Co. v. JPMorgan Chase & Co., et al.*, No. 1:09-cv-01743-RMC, 2010 WL 1444533 (D.D.C. Apr. 13, 2010), the court held that claims encompassed by FIRREA's jurisdictional bar were required to be submitted in FIRREA's claims process, irrespective of whether the lawsuit was filed against the failed bank, the FDIC, or the third-party purchaser of assets from the FDIC. The *American National* plaintiffs, holders of Washington Mutual, Inc. and WaMu Bank bonds, asserted claims against JPMorgan Chase for their investment

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

14

losses due to WaMu Bank's failure.   Although the plaintiffs "argue[d] that their lawsuit [sought] damages only from JPMorgan Chase for injuries that were caused only by JPMorgan Chase," the court recognized that the complaint's allegations "depend on the FDIC-Receiver's sale of Washington Mutual Bank's assets to JPMorgan Chase." *Id.* at *3.  As a result, the "Plaintiffs were required to pursue their claims against the FDIC-Receiver administratively through the exclusive receivership claims process that Congress provided in [FIRREA]," which, *inter alia*, "applies to 'any claim relating to any act or omission' of the FDIC as receiver for a failed bank." *Id*. at *4 (*quoting* 12 U.S.C. § 1821(d)(13)(D)(ii)).   The court therefore held that, "[h]aving failed to invoke and exhaust this administrative process, Plaintiffs' claims are barred by the Act" because the plaintiffs "cannot circumvent the Act's jurisdictional bar by aiming their claims at the assuming bank of the failed bank's assets." *Id*. (*citing Vill. of Oakwood,* 539 F.3d at 386).

Here, Plaintiffs' inability to pursue their claims due to FIRREA's jurisdictional bar is even more obvious than in *Village of Oakwood* and *American National*. Plaintiffs readily concede that JPMorgan Chase was named as the Defendant in these actions because it purportedly is the "successor in interest to Washington Mutual, Inc. and assumed certain assets and liabilities of [Washington Mutual, Inc.], including liability for the claims alleged herein."  Lowell Comp. ¶ 12; Benson Comp. ¶ 21.  As such, Plaintiffs seek to hold JPMorgan Chase responsible for WaMu Bank's alleged misconduct.  Regardless of whom Plaintiffs may name as a defendant, their claims relate to alleged acts and omissions of WaMu Bank, are governed by FIRREA, and are barred. Accordingly, the Court lacks subject matter jurisdiction over Plaintiffs' claims.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## IV.   **CONCLUSION**

For these reasons, JPMorgan Chase respectfully requests that the Court dismiss Plaintiffs' Complaints with prejudice and grant JPMorgan Chase such other and further relief to which it may show itself justly entitled.

Dated:  May 18, 2010                     Respectfully submitted,


By: _/s/ Phillip J. Eskenazi_____

Phillip J. Eskenazi (SBN 158976)
peskenazi@hunton.com
Jason J. Kim (SBN 221476)
kimj@hunton.com
**HUNTON & WILLIAMS LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:   (213) 532-2000
Facsimile:    (213) 532-2020

and

Charles A. Gall *(Admitted Pro Hac Vice)*
cgall@hunton.com
James W. Bowen *(Admitted Pro Hac Vice)*
jbowen@hunton.com
**HUNTON & WILLIAMS LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas  75202
Telephone:   (214) 979-3000
Facsimile:    (214) 880-0011

*Attorneys for Defendant*
*JPMORGAN CHASE BANK, N.A.*

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED.R.CIV.P. 12(b)(1)

64226.001200 EMP_US 3090676Iv2